(Decided 2nd July, 1880.)

---

THE MAYOR AND CITY COUNCIL OF BALTIMORE, and CHARLES WEBB, Collector *vs.* THOMAS G. SCHARF, CHAUNCEY BROOKS, and others.

*Invalidity of Ordinance No. 98, of the Ordinances of 1876, of the City of Baltimore—Failure to provide for Notice to owners of property binding on a Street directed to be Repaved—Indefeasible right of Property holders, taxed for Repaving a street, to a Hearing—Ordinance void in improperly Delegating a discretion to an official—Insufficient ground of objection to the Validity of an Ordinance—In respect of the Charter obligation of the Baltimore City Passenger Railway Company, to keep the track of its road and two feet on each side, in repair—Jurisdiction in Equity to stay by Injunction the enforcement of a void Ordinance.*

Ordinance No. 98 of the Ordinances of 1876, of the City of Baltimore, (passed under the Act of 1874, ch. 218,) authorizing and directing the City Commissioner to have all that part of Baltimore street from the west side of Greene street to the east side of Harrison street repaved, and rekerbed where the same is necessary, &c., and requiring two-thirds of the whole cost to be assessed upon the owners of the property, binding upon said street, between the streets designated, is invalid in failing to make provision for notice to such owners, of the intention of the Mayor and City Council to

Mayor, &c. of Baltimore *vs.* Scharf, *et al.*

consider the subject, and to give them an opportunity of being heard.

The right of the owners of the property fronting on the street, to a hearing is indefeasible, and the fact that the tax levied upon them respectively, is inconsiderable, and is justly apportioned, in no degree abridges this right.

Ordinance No. 98 of the Ordinances of 1876, of the City of Baltimore, providing for the repaving of Baltimore street between Greene and Harrison streets, is void in delegating to the City Commissioner, the discretion, which belonged wholly to the Mayor and City Council, in the absence of legislative enactment, to assess the cost of the work *pro rata* upon the property binding on said street between the streets designated.

It is no objection to the validity of an Ordinance of the City of Baltimore, authorizing the repaving of a street, the cost of which is to be assessed upon the owners of the property binding thereon, that it did not provide that the City Passenger Railway Company, which is required by its charter to keep the track of its road and two feet on each side of it, in thorough repair, should be assessed for its proportion of the costs of repaving such street on which its tracks were laid.

The obligation of the City Passenger Railway Company under its charter is to keep the street embracing the track of its road and two feet on each side in repair, not to repave it with a new and different, and, perhaps, more costly material.

Where an Ordinance is void, and its provisions are about to be enforced, any party whose interests are to be injuriously affected thereby, may, and properly ought to go into a Court of equity and have the Ordinance stayed by injunction.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*James L. McLane, City Counsellor,* for the appellants.

The Mayor and City Council of Baltimore was fully authorized to determine upon the necessity of having Bal-

Mayor, &c. of Baltimore *vs.* Scharf, *et al.*

timore street repaved with an improved and more durable pavement; and whether such repaving was required *solely* for the public convenience, or for the benefit of the owners of the adjacent property, or partly for one and partly for the other. *Act of* 1874, *ch.* 218.

The power of the Legislature to authorize local assessments is certainly not open to question in this State, and its exercise in relation to street paving in the City of Baltimore has been distinctly approved by this Court. *Mayor, &c. vs. Moore,* 6 *H. & J.,* 375; *Mayor, &c. vs. Hughes, Adm'r,* 1 *G. & J.,* 480; *Burns vs. Mayor, &c.,* 48 *Md.,* 198.

That the power to pave and assess the cost thereof upon adjacent property is a continuing power, not exhausted by its first exercise, and includes the power to repave with improved style of pavement, is, with the single exception of Pennsylvania, settled law in nearly every State of the Union. 2 *Dill., Municipal Corporations, sec.* 619; *McCormack vs. Patchin,* 53 *Mo.,* 33; *Gurnee vs. Chicago,* 40 *Ill.,* 165; *State vs. Jersey City,* 34 *N. J. Law,* 277; *Gale vs. Cincinnati,* 18 *Ohio St.,* 563; *Municipality vs. Dunn,* 10 *La. An.,* 57; *Macy vs. Indianapolis,* 17 *Ind.,* 267; *Lafayette vs. Fowler,* 34 *Ind.,* 140; *Goszler vs. Georgetown,* 6 *Wheat.,* 597; *Smith vs. Washington,* 20 *How.,* 135; *Mayor, &c. of Cumberland vs. Willison,* 50 *Md.,* 138.

In this State, the power to *repave* without any application from the adjacent owners is expressly given to the Mayor and City Council of Baltimore by the second section of the Act of 1874, ch. 218. In the recent well-considered case of *Burns vs. The Mayor, &c., of Baltimore,* 48 *Md.,* 198, the right of the City authorities, under this Act of 1874, ch. 218, to assess the cost of repaving Light street with Belgian blocks, upon the adjacent property owners, was directly presented. The ordinance appearing on its face to have been intended, not for the benefit of the property owners *specially taxed under it,* but for the benefit and

convenience of the *public at large,* was declared unauthor-
ized and void, so far as it attempted to enforce the special
assessments.    But the right of the City, *under this Act of*
*Assembly,* to pass a proper ordinance is distinctly recog-
nized and sustained.    (*Pages* 203, 204.)

The power in question is a legislative power; and of the
necessity and expediency of its exercise, the governing
body of the corporation, and not the Courts, is to be the
judge.    *Mayor, &c., of Baltimore vs. Moore,* 6 *H. & J.,*
375; *Mayor, &c., of Baltimore vs. Hughes' Adm'r,* 1 *G. &*
*J.,* 480; *Burns vs. Mayor, &c. of Baltimore,* 48 *Md.,* 204;
*McCormack vs. Patchin,* 53 *Mo.,* 33; *Methodist Church vs.*
*Mayor, &c.,* 6. *Gill,* 391.

The legality of the tax does not depend upon whether
the paving does or does not *in fact,* benefit the particular
property, but upon the object or motive of the corporation
in causing the paving to be done; and it was, therefore,.
expressly held in *Hughes' Case,* 1 *G. & J.,* 480, that it
was not competent to prove by oral testimony, facts to be
ascertained by the *corporation* before laying the tax.

The ordinance of May 31st, 1876, is a valid exercise of
the power granted by the Act of Assembly of 1874, ch.
218.    And in the language of the case of *Burns vs. Mayor,*
*&c. of Baltimore,* 48 *Md.,* 205, 6, "looking to the enacting
part of the ordinance alone, it is matter of conjecture that
the work appeared to the corporation to be for the benefit
of such owners, and in the absence of anything else on the
subject, the presumption would be that it did so appear,
and that the corporate authorities so adjudged and there-
fore did not exceed their powers." ·

That the city authorities considered the repaving of
Baltimore street, with an improved pavement, to be a work
required, *partly* for the public convenience, and *partly* for
the benefit and advantage of the adjacent property, could
not be more unmistakably indicated than by the provision
in the ordinance itself that the work should be done, and

the cost assessed upon the public and adjacent property owners, in certain and specific proportions, plainly set out in the ordinance.

The ordinance is not open to the objection of delegating any discretionary power to the City Commissioner to select certain portions of the street to be repaved with Belgian blocks. On the contrary, as appears from the correct copy of said ordinance, filed with the answer, the City Commissioner was explicitly directed to have the whole street between the points designated *repaved* with Belgian blocks, the only discretion left to that officer being to determine to what extent, if at all, the new pavement necessitated rekerbing.

A complete answer to this suggestion of the bill is that, if the intention of the ordinance was to have the cobblestone pavement only repaired and patched in spots, with Belgian blocks, at the discretion of the City Commissioner, no special legislation whatever was necessary. It was already the duty of that public officer to *repair* the street from time to time, with such material and in such manner as he might think best, and he understood this ordinance as requiring him, in plain terms, to *repave* with Belgian blocks the whole street, and not to mend or patch it, as is now suggested by the complainants.

To the suggestion that because of the obligation imposed upon the City Passenger Railway Company by Ordinance No. 44, of March 28, 1859, to keep the portion of Baltimore street covered by its tracks, and for the space of two feet outside of said tracks, *"in thorough repair,"* the Mayor and City Council of Baltimore has no power to assess upon the property-holders any part of the cost of *repaving* such portions of said street with Belgian blocks—the answer is obvious. This is not a question of *repairing,* but of *repaving;* not a question of keeping an existing pavement in condition for use, but of substituting for such pavement an entirely new one, of an improved and more durable style.

No claim is here made by the city to specially assess the adjacent property for the cost of keeping the Baltimore street pavement *in repair.* The cost of such work, as already stated, has always been provided for out of the general fund, and the City Passenger Railway Company held to the obligation imposed upon it by the ordinance of 1859, to *keep in repair* the portion covered by its tracks. This obligation, it is well understood, is a continuing one, and attaches to the present new and improved style of pavement, or to any other style that the Mayor and City Council may hereafter substitute for it. But the obligation imposed upon the City Passenger Railway Company certainly does not extend to a case of *repaving* such as this. On the contrary, where it has been thought desirable to impose such an obligation upon street railway companies, an *express stipulation to that effect* has been inserted in the ordinance granting to such companies the right to lay tracks, *in addition to the ordinary provision for keeping the streets in repair.* The second section of the Act of 1862, ch. 71, confirming to the City Passenger Railway Company the privileges granted by the Ordinance No. 44 of 1859, subject to the terms of said ordinance, does nothing more, and professes to do nothing more, than confirm the obligation to *repair,* imposed by that ordinance.

*Samuel Snowden* and *Orville Horwitz,* for the appellees.

The repaving of Baltimore street having been done for the public convenience, the parties owning property thereon were not liable to be assessed for such repaving, and the ordinance under which such assessments were made, not being in accordance with the authority vested in the Mayor and City Council, by the Act of 1874, ch. 218, is therefore void. *Burns vs. Mayor and City Council of Baltimore,* 48 *Md.,* 175, ; *Mayor & C. C. of Baltimore vs. Hughes,* 1 *G. & J.* 480; *Mayor & C. C. of Baltimore vs. Moore and Johnson,* 6 *H. & J.,* 375.

Mayor, &c. of Baltimore *vs.* Scharf, *et al.*

This case is different from the case of Burns, only in the fact that the ordinance itself does not show that the repaving was done for the public convenience. The evidence however shows that the repaving was only conducive to the public convenience, and not to the private benefit of the owners or occupiers of property on Baltimore street, between the streets named in the ordinance, or to the property itself. It is true that it was not necessary to state in the ordinance that the repaving was done for the benefit of the particular district, for if *nothing to the contrary appears*, such an exercise of the taxing power will be taken to be in pursuance of the authority given by the charter.

The ordinance is not conclusive, but the presumption is in favor of its validity. If, however, it appears either from the character of the improvement or from evidence *aliunde* that the benefit intended by the improvement is not peculiar to the locality covered by the ordinance, then the imposition of a tax upon the abutters is invalid. *Burroughs on Taxation, sec.* 33.

In the opinions of this Court before cited, the qualifying words " *if nothing to the contrary appears,*" have been used limiting the expressions used by the Court in reference to the effect of such ordinances, and permitting the parties assessed to shew by facts *aliunde* the ordinance, that the city authorites passed the ordinance with the intent of repaving the street for the convenience of the public, and not for the benefit of the owners of the property on the part of the street paved.

The evidence in this case is not to show that the repaving does not benefit the particular district, but to show that when done, the repaving is *only* for the benefit of the public travel. So the motive of the corporation in doing it, was to promote that object—thus rebutting the presumption, made in favor of a valid exercise of the power, from the face of the ordinance itself.

The doctrine contended for by the appellants, that the ordinance is *conclusive*, would be destructive of the rights of the citizens; for a new pavement might be laid every month, or year, or whenever the corporation might see proper to do so; and the citizens would be without any remedy, since such ordinances are passed, and their provisions carried out, without any notice to the parties to be taxed, or any opportunity for them to object to the proceedings until the work is all done and the city attempts to enforce the collection of the assessments, when he may apply to a Court of equity for relief. It would make the ordinance affect and exhaust itself upon a particular class of persons and their rights and property, and having no relation to the community in general, it would be rather a sentence than a law. *Regents' Cases,* 1 *G. & J.,* 412.

The evidence of all the witnesses shows that there was a good cobble-stone pavement on Baltimore Street, which was taken up by the City Commissioner, and new pavement put down, that this new pavement did not enhance the value of the property on Baltimore Street, or increase the rents, but that it made a wider space for driving, by removal of the gutters, and that it was only conducive to the public convenience; which facts show conclusively that this ordinance cannot be brought within the principle, which is the foundation of all legislation imposing special assessments, as laid down by the Court in *Burns' Case,* 203.

But if the Act of 1874, ch. 218, does vest in the corporation the power to regrade, repave, recurb, &c., as it shall judge best, such power must be exercised in strict conformity with the law, and cannot be delegated by the corporation. 1 *Dill. on M. Corp., sec.* 60, and authorities there cited in note 2; *Birdsall vs. Clark,* 73 *N. Y.,* 73, 29 *Am. R.,* 108 *n.*

If, therefore, the ordinance in this case, by its language, delegates to the City Commissioner the discretion to *repave*

*or recurb* Baltimore Street, it is clearly void.  The second section of the ordinance authorizes and directs the City Commissioner to have all that part of Baltimore Street, &c., *repaved and recurbed where the same is necessary*, thus vesting in the Commissioner the power to judge where it might be necessary to repave and recurb.  The words *"where the same is necessary,"* clearly refer to both the repaving and recurbing.  This is the natural meaning of the words, and as printed in the ordinances published by authority of the corporation, the punctuation will not admit of any other construction, and the printed ordinances are the evidence of what the ordinance is.  *Revised Code, Art.* 70, *sec.* 47.

Nor does it make any difference if it is punctuated as alleged by the appellants, for the delegation of the power to recurb would be as fatal to the validity of the ordinance as the delegation of the power to repave and recurb.  The words of the ordinance are, however, plain, and therefore the best evidence of what is meant by the law, and as common sense ought to prevail over grammatical rules, and the punctuation cannot be allowed to control, the language of the ordinance will only admit of the construction contended for.  *Cearfoss vs. State,* 42 *Md.*, 403 ; *Gygers' Estate,* 65 *Pa.,* 311 ; *Cushing vs. Worrick,* 9 *Gray,* 382 ; *Hawbecker vs. Hawbecker,* 43 *Md.,* 513.  And as the repaving is to be done according to the judgment of the Commissioner, the assessments are void.

" The Act of 1874, ch. 218, vests the corporation with power to provide by special ordinance *for assessing the* cost of such work, in whole or in part, *pro rata,* upon the property binding on such street, &c., and for collecting such assessment as other city taxes are collected."  This is conferred upon the city so that it might not only assess but also enforce the assessments, and any special ordinance must make the necessary provision ; because, if it does not, then there is no authority vested in the collector to

enforce such assessments.    *Cooley on Taxation,* 469 ; *Bur-roughs on Taxation,* 489.

The corporation has, in pursuance of the power vested in it by the third section of said Act, provided for proceedings by the City Commissioner by General Ordinance No. 44 of 1874, for paving streets, upon application of the owners of a majority of front feet, and also for the collection of the assessments by the city collector ; and the same is required by the law to be done in the passing of a special ordinance, the language of the two sections as to assessments and collections being identical.    As a matter of course, it might be competent in a special ordinance, to provide for assessments and collections in accordance with an existing general ordinance, and this may have been intended by the third section of the ordinance, but if so, it is decidedly an abortive attempt.    It only provides that the cost of such repaving shall be defrayed according to the provisions of ordinance No. 44, approved June 4th, 1874, viz., "two-thirds of the whole cost to be assessed upon the owners of property binding upon said street, &c., and one-third to be paid by the city," but not one word is said about the mode or manner of collecting such assessments, and as the law requires that this must be done by the ordinance, without such provision the collector has no power to enforce the payment against the property of the appellees.

The corporation having given to the City Passenger Railway Company the right to lay down its tracks upon Baltimore street, on condition that it should keep a portion of the street in repair, the ordinance for repaving should have provided that the property of said company should also be assessed for its proportion of the costs, &c., of repaving.    For it is settled that the road-bed, &c., of a street railway company, is liable to such assessments for local improvements.    *Dillon on Mun. Corp., secs.* 572 *and* 628 ; *New Haven vs. Fair Haven & Westville R. R. Co.,* 38

*Conn.,* 422; *Street Railway Company Appeal,* 32 *Cal.,* 498; *Parmelee vs. City of Chicago,* 60 *Ill.* 267.

As therefore the ordinance for repaving Baltimore street did not provide for the assessment of the tracks, &c., of said railway company, for its proportion of the costs of such repaving, &c., but in fact assessed the whole cost upon the city and the owners of property fronting on said street, it thereby exempted the said company from its liability to pay any portion of such repaving, and is therefore void. For in levying assessments for a local improvement, none can be exempted therefrom; and if any are, it avoids the tax as to the others. *Alexander and Wilson vs. The Mayor, &c. of Baltimore,* 5 *Gill,* 383, 390.

The ordinance does not give to the owners of property to be assessed any opportunity to be heard in relation to such assessment, either before the Commissioner or by an appeal; nor is any notice of the proceeding to make the improvement and consequent assessment required to be given them at any stage of the proceedings; and therefore, the same is in violation of the Constitution, and consequently void.

As the object of the proceeding was to charge the property of the abutters with a portion of the expense, clearly, notice of the proceeding and an opportunity for a hearing of some description were matters of constitutional right. *Cooley on Taxation,* 266; *Philadelphia vs. Miller,* 49 *Pa. St.,* 440, (448;) *Darling vs. Gunn,* 50 *Ill.,* 424; *State vs. Drake,* 33 *N. J.,* 194; *Wade on Notice, sec.* 1124.

The Legislature certainly did not intend to exceed its own authority by conferring upon the corporation, by the Act of 1874, the power to pass an ordinance in violation of the provisions of the Constitution, which guarantees to every citizen a proceeding by " due process of law" before his rights, either of person or property, can be taken from him—*Declaration of Rights, Art.* 19—which

Article has been defined by this Court to mean due process of law according to the course and usage of the common law. *Wright vs. Wright*, 2 *Md.*, 429, (452;) *Harness vs. Chesapeake and Ohio Canal Company*, 1 *Md. Ch. Dec*, 252 ; *Regents' Case*, 9 *G. & J.*, 365.

It is true that such assessments are made by virtue of the power of taxation, and not of eminent domain ; but " in all systems of taxation," says Judge COOLEY, " it must be a matter of importance to the person assessed that he should have an opportunity to be heard before the charge is fully established against him ; and it would seem to be a dictate of strict justice that the law should make reasonable provision to secure him, as far as may be against partiality, malice or oppression." *Cooley on Taxation*, 265.

And in order that such laws may not be obnoxious to the objection of depriving the owner of his property without due process of law, they must provide *for a mode of confirming or contesting the charge thus imposed in the ordinary Courts of justice, with such notice to the person or such proceeding in regard to the property as is approximate to the nature of the case.* *Davidson vs. New Orleans*, 95 *U. S.*, (5 *Otto*,) 101, (104.)

And no validity is given to the Act by taking the property under the taxing power, for it is not the *name*, but the *substance* of the transaction, that makes the difference between legal taxation and confiscation. *Burroughs on Taxation*, 464 ; *City of Louisville vs. Louisville Rolling Mill Company*, 3 *Bush.*, 416, (423.)

The right of the abutters to such notice has been recognized by the corporation itself, for in pursuance of the power vested in it by the third section of the Act of 1874, the corporation passed a general ordinance by which it provided for notice by the Commissioner before he proceeded to contract for the improvement. *No. 44 of Ordinances of* 1874.

And in *Burns' Case* the Commissioner was required to proceed in accordance with the general ordinance. But

the ordinance in this case gives no opportunity whatever to the party to be charged by the proceeding to be heard or notified; but the Commissioner is directed to proceed in a manner wholly arbitrary. He must decide without a hearing, and give judgment without notice. Such a proceeding is clearly "confiscation, not taxation; extortion, not assessment." *Wash. Ave. Case,* 69 *Pa.,* 352. The action of the Commissioner in fixing the amount of the assessment is a judicial act—*Burroughs on Taxation,* 482—and if his judgment is rendered without any notice to the party to be affected thereby, it is clearly void.

*Charles J. M. Gwinn, Attorney-General,* filed a brief for Johns Hopkins University, one of the appellees.

IRVING, J., delivered the opinion of the Court.

The bill of complaint in this cause was filed by the appellees to restrain the Mayor and City Council of Baltimore from collecting certain taxes which had been assessed on them for repaving that portion of Baltimore street, between Harrison street on the east, and Greene street on the west, by virtue of Ordinance No. 98 of the Ordinances of 1876. This Ordinance was passed in pursuance of authority from the Legislature given by ch. 218 of the Acts of 1874. The bill charges that the street was sufficiently paved for the interest of the complainants, with cobble stones which had already been paid for by the complainants; that the repaving was ordered to be done with "Belgian pavement," which was done for the benefit of the public generally, and was not necessary for the complainants, and subjects them to unnecessary cost and expense.

The bill sets out the several sums of money assessed on the complainants, and alleges that the Ordinance No. 98 does not provide for the collection of the alleged assessments in accordance with the Act of 1874, ch. 218, and

that the distraint is illegal. The bill further charges, that in the attempted exercise of the power claimed to have been given them by the statute, the Mayor and City Council have delegated to the City Commissioner, a discretion with respect to the repaving and rekerbing which could only be exercised by the Council itself, and that to that extent they have exceeded their powers; that if the right to delegate the discretion which has been delegated exists, the City Commissioner has not exercised the discretion properly, but has exceeded his powers. The complainants further charge that The City Passenger Railway Company is bound by Ordinance of the city and by its charter to keep the streets occupied by its tracks, and two feet on each side of its tracks in thorough repair, and that the attempt on the part of the City to make the owners of the property binding on the street pay for two-thirds of the whole cost is illegal and void. That conceding they may repave under their powers, this Ordinance is void because they have not made the City Passenger Railway Company pay any part of the expense of the work. The Circuit Court for Baltimore City, upon answer filed and proof taken, passed a *pro forma* order granting the injunction and making the same perpetual. From that order this appeal is taken.

The Ordinance in question has no preamble. It consists of three sections. The first section simply repeals Ordinance No. 80, approved September 16th, 1874. Sections 2 and 3 are as follows: "Section 2. And be it enacted and ordained that the City Commissioner be and he is hereby authorized and directed to have all that part of Baltimore street from the west side of Greene street to the east side of Harrison street repaved, and rekerbed where the same is necessary, the repaving to be done with the pavement known as the 'Belgian pavement.'

"Section 3. And be it enacted and ordained, that the cost of such repaving shall be defrayed according to the

provisions of Ordinance No. 44, approved June 4th, 1874, viz., two-thirds of the whole cost to be assessed upon the owners of the property binding upon said street between Greene and Harrison streets, and one-third to be paid by the city.

The copy of the Ordinance filed with the answer of the Mayor and City Council, and alleged to be a true copy of the Ordinance, the appellees insist is not a true copy of the Ordinance as passed and as published in the printed copy of the Ordinances, which, by law, is made evidence of what the Ordinances are; while the appellants contend that the Ordinance, as passed and on file in the proper office, and of which the copy filed with their answer is a true copy, differs from the Ordinance in the printed volume in this—that in the latter a comma *precedes* the word "repaved" instead of *following* it, as is the case in the original. The effect of this improper punctuation in the printed copy, on which the appellees rely, is to make the discretion vested in the City Commissioner by the words "where the same is necessary" apply to the repaving as well as the rekerbing; whereas, the appellants insist the true punctuation confines it to the rekerbing. At the hearing it was admitted by the counsel for the appellees that the punctuation in the original is as charged by the appellants. The appellants contend that the Ordinance is perfectly valid, and has been passed and executed in entire conformity with the Act of Assembly; that whether the repaving was necessary cannot be inquired into by this proceeding, as the Council was the sole judge of its necessity and its beneficial character to the appellees.

It is well settled that where nothing to the contrary appears in an Ordinance directing paving or repaving to be done, and the Ordinance charges the owners of the property along the line of the street with the cost of such improvement, the presumption is, that the Mayor and

City Council have decided that the improvement is so far beneficial to them and their property that they ought to pay the proportion of the cost of it which has been put on them, and it will be held an adjudication of that question by that body. *Hughes' Case*, 1 *Gill & Johnson*, 492; *Moore vs. Mayor and City Council*, 6 *H. & J.*, 375; *Burns' Case*, 48 *Md.*, 198. These cases also decide, by necessary implication, that the Mayor and City Council, under their charter and the several Acts of Assembly defining their powers, are the proper tribunal for the determination of the question whether such improvement is needed, and whether a particular district of the city should have the burden of making it; but these decisions proceed on the hypothesis that the Mayor and City Council have done all that was necessary to be done preliminary to their action, to justify their action and make it final. They do not decide the question which is raised in this case, for it was not before the Court. In *Hughes' Case* and *Moore's Case* the question did not arise, for the law was then different, and the point at least was not made. In *Burns' Case* the point was not made, and if it had been, would not have been necessary to the decision of the case as it was decided. In this case the appellants contend there is no jurisdiction in the Court to consider or review what has been done by the Mayor and City Council—that their action is final. On the contrary, the appellees insist that the Court can and ought to interfere, by way of injunction, to restrain the execution of the Ordinance against them, because the Ordinance No. 98 of 1876, under which the appellants have proceeded, is void, because it makes no provision for notice to the property holders to be affected, of their intention to consider the subject, and gives them no opportunity of being heard about it and their taxation for the cost of the repaving. The question presented has, we believe, never before been raised in this State. Prior to the Act of 1874, ch. 218, (under which Act Ordinance

98 was passed) such improvements as were provided for in that Ordinance could only be made by the Mayor and City Council upon an application of a certain portion of the owners of the property intended to be affected by the improvement and to be charged with a part of the cost. And the Act of 1870, ch. 322, in cases of change of grade, paving, repaving, or renewing curb stones of any street, lane, or alley, made provision for notice of the determination of the matter by the Mayor and City Council in respect to the application, to be published in the newspapers for three weeks successively, and thereby give an opportunity to any person to appeal from the decision of the Mayor and City Council, within thirty days, " to the City Court, or any other Court of competent jurisdiction, which Court should hear and determine the appeal." By this Act a trial by jury was accorded, and a further appeal to the Court of Appeals from any ruling of the Court. By the Act of 1874 a new state of things is introduced. The Act of 1870, ch. 322, is expressly repealed by it. The necessity for the application of a part of the owners of the property binding on the street to be improved, was wholly dispensed with, and the authority was conferred on the Mayor and City Council to proceed without such application. The Act makes no provision about notice, and the question is whether the Act of Assembly intended, in cases of paving and repaving, such as are provided for in the Act, to dispense with notice altogether; or intended to leave the question of notice, its kind and extent, to the discretion of the Mayor and City Council; if it did intend to dispense with the necessity for notice, whether the Legislature had the power to do so? And, if the Legislature intended to leave that matter entirely to the Mayor and City Council, whether the Mayor and City Council have acted legally and constitutionally in dispensing with notice, or failing to provide affirmatively for notice? We cannot suppose the Legislature intended to sanction the course pursued by the City authorities in this instance.

It was not necessary for the Legislature to designate all the formalities the Mayor and City Council were to observe in the execution of the powers the Legislature was conferring upon them by the Act in question. We must assume that the Legislature intended them to determine the character and extent of the notice, which the exigency of the case demanded, and of the proceedings after it. The 26th section of the Baltimore City Code of 1879 says, "the Mayor and City Council shall have power to pass all Ordinances necessary to give effect and operation to all the powers vested in the corporation." The Legislature must have intended them to execute the powers vested in them respecting the paving and repaving the streets of the city, with a due regard to all the legal and constitutional rights of those interested in their action. The Legislature has not declared that notice shall in no case be necessary, and the mere failure to provide for it does not, we think, warrant the inference that it intended to abridge any of the constitutional rights of the property-holders in the city.

Judge DILLON says, in section 262 of his work on *Municipal Corporations,* "Where the power to legislate on a given subject is conferred, but the mode of its exercise is not prescribed, there the Ordinance passed in pursuance thereof must be a *reasonable* exercise of the power, or it will be pronounced invalid." The Legislature could not have intended so unreasonable an exercise of the powers conferred about paving and repaving, as to justify such an Ordinance as this one is, without any notice of any kind to the property-holders.

If notice was necessary, and was provided for by the statute and Ordinances, at a time where a majority of front feet owners were required to petition for the repaving, as a protection to those who did not unite in the application, even to the extent of requiring notice of what action the Mayor and City Council had taken, in order that an

Mayor, &c. of Baltimore vs. Scharf, et al.

appeal might be taken to a Court of justice, and finally an appealed to the Court of Appeals; surely, when the necessity for application by any body is done away with, and all opportunity of appeal by direction from the Legislature is withdrawn, the Legislature did not intend to authorize the Mayor and City Council to proceed without any notice at all. *A fortiori* there was greater need now for notice than before. If such was the purpose of the Legislature, we could not uphold the law; but if the Ordinance had made suitable provision for notice under the law, we think it might stand. In providing for no notice it departs from the usage which has prevailed, and which still accords, by law, notice in other cases of improvement of no greater importance; such as opening new streets, widening old ones, paving to prevent or remove nuisances and many others.

Can such an Ordinance be supported? and can proceedings under it be upheld, of which, so far as the complainants are concerned, the first notice they had was the levy for assessments.

The Constitution of the United States provides that no State shall deprive any person of life, liberty, or property without due process of law; "what is due process of law" has been the subject of much and very able discussion, and of many decisions; but an exact definition has never been given which will include all cases to which it applies. The full meaning of such an important phrase remains to be ascertained by the gradual process of "exclusion" and "inclusion" in judicial determination as cases may arise. *Davidson vs. New Orleans*, 6 *Otto*, 104. Judge Cooley, in his work on *Constitutional Limitations*, page 356, after saying that " due process of law" is not confined to *judicial proceedings*, says, that "in each particular case it means such an exertion of the powers of Government as the settled maxims of the law sanction, and under *such safe-guards* for the protection of individual rights as those

maxims prescribe for this class of cases to which the one
in question belongs." The same author in his work on
*Taxation, page* 265, says, that in proceedings involving
taxation, "it is of the utmost importance to the person
assessed, that he should have opportunity to be heard
before the charge is fully established against him," and
on page 266, Judge COOLEY, says, "we should say that
notice of proceedings in such cases and an opportunity of
being heard were matters of constitutional right." It is
necessary therefore to the validity of a law, such as the
Ordinance under review, that at some stage of the proceed-
ings in the tribunal charged with determining the ques-
tion, the party to be affected should have opportunity of
being heard on the matter.

The case of *Stuart vs. Palmer*, 74 *N. Y.*, 183, is similar
to this and exactly in point. An Act was passed " to lay
out, open and grade Atlantic avenue in the town of New
Lots, King's County." Proceedings were had and assess-
ments of taxes were made. A proceeding was instituted
on the part of one of the persons taxed, to vacate the
assessments, to remove a cloud from his title and to
restrain the collector from collecting the tax. In that
case no notice was provided for by the law or the
ordinance. The case was most carefully considered, and
Judge EARL in delivering a very convincing opinion,
in which all the other Judges concurred, says: "I
am of opinion that the Constitution sanctions no law
imposing such an assessment, without notice to, and a
hearing, or an opportunity of a hearing by the owners
of the property to be assessed. It is not enough that the
owners may by chance have notice, or that they may, as a
matter of favor, have a hearing. The law must require
notice to them and give them a right to a hearing and an
opportunity to be heard. It matters not upon the question
of the constitutionality of such a law, that the assessment
has in fact, been fairly apportioned. The constitutional

validity of the law is to be tested, not by what has been done, but what may by its authority be done. The Legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice."

The same doctrine is maintained by the Supreme Court of the United States in *Davidson vs. New Orleans*, 6 *Otto*, 104; *Philadelphia vs. Miller*, 49 *Pa.*, 440; 31 *N. Y.*, 574; *Ireland vs. The City of Rochester*, 51 *Bar.*, 414.

In Ohio, and perhaps some other States, it has been held that notice is not necessary; but, in our opinion, the weight of authority is decidedly on the side of its necessity as a constitutional right. No cause could better illustrate the necessity for it than the present one. Here was a pavement of cobble stones for which the complainants, or their predecessors in title, had paid. The City determines to take that up, and replace it with a pavement of a different material and character. Adjudging, without notice to them, that their property will be much increased in value by the improvement, so much so as to justify the imposition of two-thirds of the cost of the new pavement upon them, they are taxed accordingly, and the collector of taxes is sent after them to collect it,—when the first information they have had of the proceeding is the presentation of a tax bill which is a lien on their property. It may be likened to obtaining a judgment without the defendant having ever been summoned. Of course, on proper proceeding such judgment cannot stand. The injustice of such legislation is glaring. It is not only unjust; it is an invasion of those rights which cannot be interfered with except by "due process of law," and this "due process of law" involves a day for, and an opportunity for, a hearing. This Ordinance makes no provision for notice, and, on the authority of adjudged cases, is invalid. If the Act of Assembly is good, the Ordinance is void so far as the appellees are concerned, for the want of

some provision for notice to them.  It may be that the decision would have been the same, and that their proofs and arguments would have been unavailing if they had received notice, had appeared and had a hearing.  If so, they would have been compelled to abide the decision which had been legitimately reached.  Still, their right to the hearing is indefeasible.  It may be, that the tax levied on the complainants respectively is inconsiderable, and it may be justly apportioned in fact; but that can make no difference in determining this question, for their rights cannot be infringed in the slightest degree by the City without due constitutional proceedings to warrant it.  It is said that the restrictions, such as this doctrine imposes on the Mayor and City Council, will seriously retard public improvement, and put obstacles in the way of the City's progress.  The necessity for improvement to keep abreast with other cities and progress generally, cannot justify the disregard of conceded rights of the citizen who is to be especially charged with the cost of such improvement; but, in fact, the improvement which well-directed public spirit may devise will not be impeded thereby.  The substitution of a new pavement of different material for an old one is certainly of no higher importance in the city's march of improvement than the widening of a great street or thoroughfare, or the paving of a street or alley to prevent or remove a nuisance; yet in each of the latter instances the law, conceding the great underlying principle of the right of the citizen to notice, provides for notice; and, in the case of paving to prevent or remove a nuisance, provides a mode for contesting the necessity for the work, and the propriety of the tax even after the work is done, by allowing defence on a suit for the tax imposed.  That does not stop or hinder improvement, nor will this decision; but if it did, in pronouncing upon such important constitutional rights, we could not set aside well-established principles to expedite the improvement of a city.

Mayor, &c. of Baltimore *vs.* Scharf, *et al.*

We might well rest the decision of this case on the point first discussed, but there is another question of the gravest importance, affecting the validity of this Ordinance on which it is proper to pass, especially as the defect can so easily be avoided in future. It is a plain principle, and well settled by authority that "public powers or trusts devolved by law or charter on a council or governing body cannot be delegated to others." So that an Ordinance, which delegates a discretion which can only be exercised by the council, or requires a certain thing to be determined by some one else, as their agent, which their charter requires to be decided by them, is void. 1 *Dillon on Municipal Corporations, sec.* 60; *Birdsall vs. Clark,* 73 *N. Y.,* 73. In the case of *Birdsall vs. Clark,* the question is very fully discussed by Judge CHURCH, and most pertinently to this case. In that case the charter of Binghampton conferred on the council the power to have certain work done "by contract or otherwise." The council passed an order directing the superintendent of streets to cause it to be done. It was decided that the act contemplated the action of the council in each case—that it was a power to decide as to the mode of doing the work which could not be delegated to another. Whether the work should "be let to the lowest bidder, or by contract with somebody without bidding, or partly by contract and partly by day labor, were questions the council only could decide." "The owner who is ultimately to pay the expense has an interest in the manner in which the work is to be done, because it may materially affect the amount of expense. He is entitled to the judgment of the council on that question." In *Thompson vs. Schermerhorn,* 6 *N. Y.,* 92, the Court held that an Ordinance which provided for the pitching and flagging of a certain street in such manner as *the city superintendent,* under the direction of a committee of council, should direct and require," was void; *because the council* did not decide by the

Ordinance how the work was to be done. · Applying these principles to the Ordinance before us we find it is fatally defective in leaving to the City Commissioner the determination of certain questions, solely within the power of the Mayor and City Council. We do not think the leaving to the City Commissioner the determination of the question where the kerbing needs replacing, is a violation of this principle. To determine whether this or that kerb stone should come out and a new one go in, cannot be an infraction of the principle announced. All such rules of law are to be rationally understood and reasonably applied. It would be almost impossible, in the nature of things, for an Ordinance to designate every foot or inch of the line of the street where a new kerb stone was needed. That would be wholly impracticable. They determine that rekerbing along a particular street is needed, and the Commissioner is directed to do it, saving all that can be saved of the old. It is the discretion necessarily belonging to a workman employed to do a work. In alluding to this part of the appellees' argument we restrict our comments to the kerbing, for we think a reasonable construction of the Ordinance would put the punctuation where appellants insist it belongs, if it was not abundantly clear that the original Ordinance did so place it; for it is very unreasonable to suppose the Council intended to provide for paving with Belgian blocks *in patches;* so as to have a patch of cobble stones here and a patch of Belgian blocks there. That is too irrational to suppose the Council so intended. The discretion, which we think has been improperly delegated, is about a matter of which the Mayor and City Council only could legally determine. "The Mayor and City Council shall have and are hereby vested with full power and authority to provide by Ordinance," &c., is the language of the Act of Assembly. After stating what they may provide for by Ordinance, the Act adds, "and also for assessing the cost of any such

work in whole or in part *pro rata* upon the property binding on such street, lane or alley or part thereof, and for collecting such assessments as other city taxes are collected." The Act of Assembly vests them with the power of fixing the *pro rata* to be paid by the benefited property or property owners. The Act does not determine *how* that *pro rata* is to be ascertained, but leaves the Mayor and City Council to determine the mode of reaching the contributory shares of such property holders. The third section of the Ordinance, we are considering directs that the cost of the repaving shall be defrayed according to the provisions of Ordinance No. 44 of 1874, viz., "two-thirds of the whole cost to be assessed upon the owners of the property binding upon said street between Greene and Harrison streets, and one-third by said city."

The Ordinance does not establish upon what principle this assessment is to be made. The *videlicet* would seem to limit the provisions of Ordinance 44, intended to be re-enacted here, to the particulars following the *videlicet*, which designates the proportion to be paid by City and owners respectively, and how the tax is to be collected. Conceding it, however, a wider range and to include any provision of Ordinance 44, which may be applicable to the subject indicated, we look in vain to Ordinance 44 for any provision how this tax is to be imposed. Section 17 of the last-mentioned Ordinance, which is the only section relating to the subject, fixes no basis for a computation. Now that basis may be, according to the authorities and practice, according to *area*, according to *frontage*, or according to the *value* of the property. It is manifest that these several modes, as the one or the other might be adopted, might materially affect the contributory share of the respective owners. This is especially one of the things about which the owners would be entitled to notice and a hearing. Apportionment according to frontage is subject to serious objection, as sometimes working great injustice

and imposing an undue proportion of the cost of the work on proprietors whose actual area is small and of inconsiderable value, while others of smaller frontage but much larger area and value are required to pay a smaller share of the cost than their neighbor of smaller dimensions and worth.   It certainly is not so fair and equal a method as upon the basis of the value of the actual area unimproved which fronts on the street; and while we do not mean to say that apportionment according to front feet cannot be sustained in this State, notwithstanding decisions elsewhere against it, yet the objections to it as a just mode of computation, demand that the Mayor and City Council determine by Ordinance, either general or special, on what basis the apportionment shall be made.   It is certainly not provided for in either of the Ordinances 98 or 44, and there is no general Ordinance on the subject.   Section 845 of the Local Code of Baltimore City did provide how the apportionment was to be made, and the mode of computation; but that was expressly repealed by this Act of 1874, ch. 218, and that Act fixed no basis in its stead.   The leaving, therefore, of that question to the determination of the City Commissioner, was a delegation to him of a discretion about a question which belonged wholly to the Mayor and City Council, in the absence of legislative enactment on the subject.   We were told, at the hearing in this Court, that the frontage method was the method adopted, and that was the practice.   It may have been practiced, and properly so, in cases where that method was authorized by law or Ordinance; but to enable a ministerial officer, such as the City Commissioner, to make his calculations and assessments on that principle, that method must have been selected for him by the authorities vested with the power of making the selection. The mode adopted for the other cases of improvement, and authorized by the Ordinances directing such improvements, cannot be adopted and applied to this unless there

be a general Ordinance covering the subject—and we can find none.

The questions raised by the appellees that the city could not order this repaving to be done at the charge of the appellees, because the charter of the City Passenger Railway Company imposed the duty, on that corporation, of keeping the track of the road and for two feet on each side of it in thorough repair; or if it could, it could not do so legally without assessing it with a part of the cost, are not necessary to the decision of the case as it stands; but as it may prevent further litigation on that score, we may properly dispose of the questions. There can be no doubt that the rails, road-bed and other property of that corporation are subject to taxation for municipal purposes; but it does not follow that it must contribute specially to street improvement such as this is. Their estate is such as would not be enhanced in value by the projected work. The only ground on which assessments, on the owners of land on each side of the road, for such improvements, has ever been justified, is on the theory that such property owners are especially benefited, and the land itself enhanced in value by the improvements. *Stuart vs. Palmer*, 74 *N. Y.*, 189; *Burns' Case*, 48 *Md.*, 198. The property of the City Passenger Railway does not fall within the description of lands embraced in the theory; nor within the description of " property " which the Act of Assembly directs may be made to share the burden of the improvement. It is the property on each side of the street which the Act authorizes the city to charge in whole or in part with the cost of the repaving.

The objection that the obligation to repair is on the Railway by the express terms of its charter, interposes no sufficient reasons to avoid the Ordinance. Their obligation is to keep in repair, not to repave with a new and different material and perhaps more costly. The obligation of the Railway company to repair the new pavement

whenever necessary, would attach under their charter obligations, unless sufficient reasons could be found to relieve them.    They accepted their charter with the burdens imposed, with the knowledge that the city was growing, and that great changes would become necessary in the way of improvement to keep pace with its advance in material wealth and importance as a metropolis, and their contract would have to be construed in the light of such facts.    Having determined that Ordinance, No. 98, of the Ordinances of 1876, is fatally infirm for the reasons indicated, the only remaining question is, was the remedy by bill for injunction?    Of this there can be no doubt.    This has been conclusively settled by many cases in this Court.    In *Page vs. Mayor, &c. of Baltimore*, 34 *Md.*, 564, this Court said: "There is no doubt that where an Ordinance is void, and its provisions are about to be enforced, any party whose interests are to be injuriously affected thereby, may, and properly ought to go into a Court of equity, and have the Ordinance stayed by injunction.    This course of proceeding has been sanctioned and approved by this Court in numerous cases." To the cases there cited to sustain that doctrine, may be added *Mayor and City Council of Baltimore vs. Radecke*, 49 *Md.*, 232, where it is emphatically re-affirmed.    This case falls within the principles decided in those cases. The jurisdiction of the Court of equity was clear, and the Court below committed no error in granting the injunction and making it perpetual.

*\* Decree affirmed with costs.*

(Decided 2nd July, 1880.)

Miiller, J., dissented.

\* This decree, subsequently, after a re-argument of the case, was rescinded, the decree appealed from reversed, and the bill dismissed. *Vide Mayor, &c. of Baltimore vs. Scharf, et al.*, 56 *Md.*