# MARYLAND REPORTS.

JOHN ALBERGER, JOHN S. BERRY, JOHN F. BATZLER, and others *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, and EDWARD HIGGINS, City Collector.

*Construction of ordinance No. 6, of 1883, for Repaving a street in the City of Baltimore—Constitutional law.*

By section 1 of ordinance No. 6 of 1883, of the Mayor and City Council of Baltimore, the City Commissioner was "authorized and directed to have all that part of Baltimore street, from the east side of Greene street to the west side of Gilmor street, repaved with Belgian block pavement, and recurbed with six inch curbing, and regraded where the same may be necessary," &c.; one-third of the cost to be paid by the city, "and the other two-thirds thereof to be assessed, as provided in Article 47, of the City Code, title 'Streets and City Commissioner,' sub-title 'Grades, Grading, Paving,' &c.; upon the owners of the property binding on said portion of Baltimore street, in proportion to the number of front feet owned by them respectively, on the portion of said street hereby directed to be repaved, regraded, and recurbed where necessary." And by section 2 it was provided, "that all the proceedings under this ordinance shall be the same as under Article 47, of the City Code, title 'Streets and City Commissioner,' sub-title 'Grades, Grading, Paving,' &c.; so far as the provisions of said Article are applicable thereto, except that the City Commissioner shall be required to advertise for proposals for furnishing the stone *only*, and that the work of laying the same shall be done under the direction and supervision of said City Commissioner, by labor employed by the day, and paid for as other day labor employed in said City Commissioner's Department is paid." After the passage of this ordinance, the City Commissioner advertised for proposals to furnish

1                              v. 64.

one million of granite paving blocks, that number being required for various improvements on hand, including that provided for by the ordinance recited. Contracts were duly made for the same with the lowest responsible bidders; and in like manner, proposals for curb stones and gutter stones were advertised for, for such amounts as would be required for the year, and contracts therefor were awarded to the lowest responsible bidders. The City Commissioner then proceeded to repave and recurb the part of the street described; and after its completion assessed the abutting owners on the street with the proportion of the cost of the improvement as directed by the ordinance. On a bill to have enjoined the collection of said assessments, filed by certain of the assessed parties, against the Mayor and City Council of Baltimore and the City Collector, it was HELD:

1st. That the special ordinance in question having provided only for advertisement for proposals to furnish the material for the work, and having required the work to be done, under the direction of the City Commissioner, by the employment of labor by the day, no assessment could be made until after the work was completed and the cost ascertained.

2nd. That this however was a matter that rested exclusively in the discretion of the legislative branch of the city government, and was not within the control of the Courts.

3rd. That under the power delegated by the Act of 1874, ch. 218, the discretion exercised by the City Council, in regard to the propriety or necessity of the improvement provided for by the ordinance, could not be controlled by the Courts. And it was only where the power was exceeded, or fraud was charged and shown to exist, or where there had been a manifest invasion of private rights, that the remedial and corrective power of the Courts could be successfully invoked.

4th. That whether there was a real necessity, or a good reason, for the removal of the old pavement, and replacing it with Belgian blocks, was a matter entirely within the discretion of the City Council, and over the exercise of that discretion the Courts had no power of review.

5th. That the special ordinance in question was not so repugnant or inconsistent in its provisions as to render it inoperative and void.

6th. That the fact that the City Commissioner had to determine for himself, at the risk of being in error, as to what was consistent or

Alberger, *et al.* *vs.* Mayor, &c., of Baltimore, *et al.*

inconsistent as between the provisions of the special ordinance and those of Article 47, of the City Code, constituted no valid objection to the assessments made, nor to the validity of the ordinance that rendered it necessary that he should so decide.

7th. That the proceedings of the City Commissioner under the ordinance were not rendered illegal by the fact that the advertisement for proposals to furnish the Belgian blocks, and the curb and gutter stones, was not separately and specially made with reference to contracts authorized to be made under that ordinance, but were made for more materials than were required for the particular work; it not being pretended that proposals were offered for more material of any kind than was actually needed for street improvements of the city, then commenced or about to be commenced; and it not being shown that the complainants were in any manner prejudiced by the mode in which the proposals were made.

8th. That the ordinance was not rendered unconstitutional and invalid on the ground that it neither provided for notice nor opportunity to the property owner to be heard before the assessment was made and enforced against his property, and therefore the property of the citizen was attempted to be appropriated without due process of law.

APPEAL from the Circuit Court of Baltimore City.

This was an appeal from a decree refusing the injunction prayed for in the bill of complaint, and dismissing the bill. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Samuel Snowden,* for the appellant.

*Bernard Carter, City Solicitor,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case is filed by a large number of owners of property abutting on Baltimore street, in the City of Baltimore, to have enjoined the collection of special assessments made on their property by the city authorities to pay

for the regrading, repaving, and recurbing of that part of Baltimore street between the east side of Greene street and the west side of Gilmor street. The objection taken to the assessments is, that they were made, or attempted to be made, in a manner that is without warrant of law, and under an ordinance that is unconstitutional and void.

The ordinance in question is that designated as No. 6 of 1883, and by section 1 the City Commissioner was "authorized and directed to have all that part of Baltimore street, from the east side of Greene street to the west side of Gilmor street, repaved with Belgian block pavement, and recurbed with six inch curbing, and regraded where the same may be necessary," etc., one-third of the cost to be paid by the city, "and the other two-thirds thereof to be assessed, as provided in Article 47 of the City Code, title ' Streets and City Commissioner,' subtitle ' Grades, Grading, Paving,' &c. upon the owners of the property binding on said portion of Baltimore street, in proportion to the number of front feet owned by them respectively, on the portion of said street hereby directed to be repaved, regraded and recurbed where necessary." And by section 2 it is provided, " that all the proceedings under this ordinance shall be the same as under Article 47 of the City Code, title ' Streets and City Commissioner,' sub-title ' Grades, Grading, Paving,' " &c., so far as the provisions of said Article are applicable thereto, except that the City Commissioner shall be required to advertise for proposals for furnishing the stone *only*, and that the work of laying the same shall be done under the direction and supervision of said City Commissioner, by labor employed by the day, and paid for as other day labor employed in said City Commissioner's Department is paid."

It appears that after the passage of this ordinance the City Commissioner advertised for proposals to furnish one million of granite paving blocks, that number being re-

quired for various improvements on hand, including that provided for by the ordinance just recited. Contracts were duly made for the same, with the lowest responsible bidders; and in like manner proposals for curbstones and gutterstones were advertised for such amounts as would be required for the year, and contracts therefor were awarded to the lowest responsible bidders. The City Commissioner then proceeded to repave and recurb the part of the street described; and after its completion assessed the abutting owners on the street with the proportion of the cost of the improvement as directed by the ordinance. It was to prevent the collection of such assessments that this suit was instituted. Answers were filed to the bill and testimony was taken, and upon hearing a decree was passed dismissing the bill; and it is from that decree that this appeal is taken.

The bill makes no charge of fraud or collusion of any kind; but the complaint is founded exclusively upon what is supposed to be an illegal method of proceeding, and the alleged unconstitutionality of the ordinance.

The ordinance, in some respects, seems to be a departure from the long established method of proceeding in the matter of paving and repaving the streets of the city. Heretofore it has been the practice, and it is so provided in Article 47 of the City Code, for the City Commissioner to advertise for proposals for doing the work of improvement, and to award the contracts to the lowest responsible bidders. This is the mode provided by section 32 of the Article of the City Code referred to; and after thus contracting for the work to be done, the Commissioner is then authorized and required, by sections 34 and 35, to proceed at once to impose a tax or assessment, and to make out and furnish a list of the persons liable for the amounts assessed. But the special ordinance in question has provided only for advertisement for proposals to furnish the material for the work, and has required the work to be

done, under the direction of the City Commissioner, by the employment of labor by the day; and, of course, no assessment could be made until after the work was completed and the cost ascertained. This, however, is a matter that rests exclusively in the discretion and judgment of the legislative branch of the city government, and is not within the control of the Courts. The Act of the General Assembly of 1874, ch. 218, under which this ordinance was passed, simply confers the power on the city, in general terms, to provide by ordinance for paving and repaving the streets, and makes no provision as to the manner of having the work done, whether by contract or day labor. That is a matter that has been left to be regulated entirely by the city authorities. And so in regard to the necessity or expediency of having the work done. Under the power delegated by the Act of 1874, ch. 218, the discretion exercised by the City Council in regard to the propriety or necessity of the improvement provided for by the ordinance cannot be controlled by the Courts. It is only where the power is exceeded, or fraud is charged and shown to exist, or where there has been a manifest invasion of private rights, that the remedial and corrective power of the Courts can be sucessfully invoked. In 1 *Dill. on Munic. Corp.* (*3rd Ed.*) *sec.* 94, it is laid down as text law, that "where the law or charter confers upon the City Council or local legislature, power to determine upon the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the Courts. In such case the decision of the proper corporate officers is, in the absence of fraud, final and conclusive, unless they transcend their powers. Thus, for example, if a city has power to grade streets, the Courts will not inquire into the necessity of the exercise of it, or the refusal to exercise it, nor whether a particular grade adopted, or a particular mode

of executing the grade, is judicious." And the application of this principle to this case effectually disposes of the contention on the part of the complainants, not only with respect to the manner of doing the work, but also with respect to the necessity or expediency of having it done. Whether there was a real necessity, or a good reason, for the removal of the old pavement, and replacing it with Belgian blocks, was a matter entirely within the discretion of the City Council, and over the exercise of that discretion the Courts have no power of review.

The appellants object to the special ordinance in question, that it is so repugnant or inconsistent in its provisions as to render it inoperative and void. But we are not able to perceive wherein it is so repugnant in its provisions. It provides that all the proceedings under it shall be the same as under Article 47 of the City Code, heretofore referred to, *so far as the provisions of that Article are applicable thereto, except,"* &c. The sections of Article 47 of the City Code, so far as they were applicable, and not inconsistent with the special provisions of the last ordinance, furnished the rule for the government of the City Commissioner; and it does not appear that he has disregarded the provisions of Article 47 in any particular wherein they were applicable, and not inconsistent with the provisions of the special ordinance No. 6. And the fact that the City Commissioner had to determine for himself, at the risk of being in error, as to what was consistent or inconsistent as between the provisions of the special ordinance and those of Article 47 of the City Code, constituted no valid objection to the assessments made, nor to the validity of the ordinance that rendered it necessary that he should so decide. If he decided correctly, that was all that could be insisted upon by any person affected by his proceedings. Every agent of government, whether State or municipal, is required primarily to determine for himself how he shall act and what the

law requires him to do, even where statutes are apparently in conflict; and the case of the City Commissioner forms no exception to the general rule.

· There is another objection taken to the legality of the proceedings of the City Commissioner under the ordinance, and that is, that the advertisement for proposals to furnish the Belgian blocks, and the curb and gutter stones, was not separately and specially made with reference to contracts authorized to be made under that ordinance, and that because the proposals were made for more materials than were required for the particular work, therefore the special assessments upon the abutting property along the line of the improvement authorized was illegally made. But in this we cannot agree. It is not pretended that proposals were offered for more material of any kind than was actually needed for street improvements of the city, than commenced or about to be commenced; and it is not shown that the complainants were in any manner prejudiced by the mode in which the proposals were made. On the contrary, it may reasonably be supposed that in contracting for large quantities, more favorable terms were, or could be, secured to the city than by making a number of separate small contracts for the same character of material. There is nothing in the ordinance requiring the proposals to be advertised separately; and there is no reason, that we perceive, for requiring it to be done. The proposals are all made upon estimates that are open to the public; and instead of separate proposals for material for each small improvement that may be in progress or in contemplation, convenience as well as economy would seem to be subserved by allowing the city to supply its wants upon comprehensive proposals. That is what was done in this case, and we find nothing in the law or the ordinances of the city that forbids it.

Nor can we perceive that there is any substantial ground for the objection taken to the manner adopted of ascertain-

ing the cost of the entire work done under this ordinance, and the apportionment of the amount to be paid by the owners of the property abutting along the line of improvement. It is shown in proof that the method adopted produced accurate results, and there is nothing in the case to indicate the contrary. The ordinance requires nothing more than that the entire cost of the improvement should be exactly and faithfully ascertained, and then divided between the city and the property owners benefited, in the proportions fixed by the ordinance. That appears to have been done in this case.

The objection made most prominent in the allegations of the bill to the assessments, is the supposed constitutional invalidity of the ordinance under which such assessments were made and attempted to be enforced. It is objected that the ordinance neither provides for notice nor opportunity to the property owner to be heard before the assessment is made and enforced against his property, and therefore the property of the citizen is attempted to be appropriated without due process of law. This constitutional objection has not been argued by counsel at the bar, for the reason, doubtless, that the question is regarded as definitely settled in this Court by the majority opinions delivered in the cases of *Mayor, &c. of Baltimore vs. Johns Hopkins Hospital, et al.*, 56 *Md.*, 1, and *Mayor, &c. of Baltimore vs. Scharf, et al.*, *Idem*, 50. The principles held by the majority of the Court in those cases would seem to be quite conclusive of the constitutional question raised by the bill in this case, and that objection must therefore be overruled. And it follows from what we have said that the decree appealed from must be affirmed, with costs.

*Decree affirmed.*

(Decided 23rd June, 1885.)