# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* ALICE GERRY STEWART ET AL.

*Municipal Corporations—Paving Streets—Title and Validity of Ordinance—Notice of Assessment to Abutting Property Owners—Discretion Given to City Engineer to Use Vitrified Brick in Addition to Asphalt—Front-Foot Rule of Apportionment.*

The General Paving Ordinance, contained in Art. 48 of the Baltimore City Code, directs that when a street is to be paved, the following notices shall be given: 1, as to the pendency of the ordinance providing for the paving of the particular street ; 2, as to the apportionment of the cost of the paving ; 3, as to the right of each interested party to appeal from the findings of the City Engineer as to the apportionment to the Baltimore City Court. The title of Ordinance No. 50, of 1900, was "to provide for the grading, and paving with sheet asphalt, and curbing all that portion of St. Paul street from 25th to 30th street." The ordinance directed that the cost of the work, with one exception, should be assessed upon the abutting property in proportion to its frontage, and it directed the City Engineer to pave the street with sheet asphalt, except that vitrified bricks might be used in the gutters and upon such other portions of the street as the City Engineer might deem desirable or necessary. The city charter declares that every ordinance enacted by the city shall embrace but one subject which shall be described in the title. Notices of Ordinance No. 50 were duly given in pursuance of Art. 48 above mentioned. An abutting property owner, upon whom part of the cost of paving was assessed, attacked the validity of the ordinance and assessment upon various grounds. *Held*,

1st. That the title of the ordinance is not misleading or in violation of the city charter relating to titles, since it is not necessary that the details of the subject-matter dealt with should be set forth in the title of the ordinance, and the use of vitrified brick in the manner provided in the body of the ordinance does not impair the scheme to pave the street as a whole with asphalt, and that the notice as to the pendency of the ordinance was also for the same reason sufficient.

2nd. That the ordinance is not invalid in that it delegates to the City Engineer a discretion to use either asphalt or vitrified brick in the paving, since the ordinance designated asphalt as the material to be used, and the City Engineer was only empowered to use the brick at specified places, and this limited discretion was not a delegation of the legislative authority to determine what material should be used.

3rd. That the objection that the street in question was already paved with cobble stones and needs no other pavement is untenable, since the

question whether a street shall be repaved or not, is a matter entirely within the discretion of the City Council and beyond the control of the Court.

4th. That the front-foot rule of apportioning the cost of the paving upon the abutting owners, after notice to them is valid under the city ordinances and the previous decisions of this Court.

Cross-appeals from the Baltimore City Court (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Charles W. Field* (with whom was *Wm. Pinkney Whyte* on the brief ), for the appellant :

The petition of the appellees to the Baltimore City Court prayed that the proceedings should be quashed, and the appellees released from the payment of any assessment whatever, for reasons that were drawn out at great length. Boiled down, they practically attack the ordinance in question : 1st, because the appellees were thoroughly satisfied with the present cobble-stone pavement, and did not consider their property was benefited to the amount of their assessment by the new pavement proposed to be laid under the ordinance ; and second, because the front-foot rule of apportionment was adopted by the ordinance instead of apportioning the cost according to the valuation of the respective properties abutting on the street.    At the argument before JUDGE DOBLER, this objection was absolutely ignored and lost sight of, and the ordinance was attacked on other grounds and the proceedings were quashed on other grounds entirely.    On the morning the case was called for trial, the appellees filed a motion to quash upon the following grounds :  1st, because the subject of the ordinance is not properly set forth in its title ; 2nd, because no proper notice was given in accordance with section 61A of Article 48 of the Baltimore City Code, before the said ordinance was passed by the City Council ; 3rd, because the ordinance delegates to the City Engineer the power to decide whether the street shall be paved with sheet asphalt or with vitrified brick.    After argument, the learned Judge ruled with us on the third objection,

but held the first and second objections were well taken and quashed the proceedings. The result was to annul the entire proceedings in the case and stop further action therein, and to release the appellees from the payment of one cent of their assessment. This appeal is taken from such ruling.

The only objection urged to it was that the title of the ordinance called for paving with " sheet asphalt," whilst the ordinance itself called for " the paving of sheet asphalt," with the proviso that the use of vitrified brick in lieu of asphalt shall be allowed in "gutters and upon such other portions of said street, as in the judgment of the City Engineer shall be necessary or desirable." In other words, whilst the ordinance allowed the City Engineer to use asphalt, *or* part asphalt and part vitrified brick, the title of the ordinance mentioned asphalt only. This objection might have some weight if it was necessary to have a complete summary or abstract of the contents of the ordinance in the title, but no such necessity exists. This question of what the title of an Act should contain has been repeatedly passed upon by this Court and the doctrine is clearly laid down in *Phinney* v. *Sheppard Asylum,* 88 Md. 636.

The title does not have to contain an abstract of the ordinance nor a full description of its provisions. All that is necessary is, that the ordinance should have one general subject and that everything in the body of the ordinance must be germane to that subject ; and that the title shall express that general subject. We submit that this title expresses that subject, to wit, the paving of St. Paul street between Twewty-fifth and Thirtieth streets, and that the ordinance itself contains only what is germane thereto.

Now, in reference to the second objection that the notice of the pendency of the ordinance before the Joint Standing Committee on Highways of the City Council, which is required by section 61A of Article 48 of the City Code of 1893, was insufficient and misleading, we would state that the only notice that is required by section 61A, to be published, is a notice published for ten days in two newspapers " of the introduction of said ordinance, and that any and all persons interested therein

will be heard upon any matter relating thereto by the said Joint Standing Committee on Highways at the time and place to be designated in said notice," and that this notice was contained in the advertisement. To read it is to see that this is so. The ordinance does not require that the substance of the ordinance or its terms shall be published, but only the fact that an ordinance to pave a certain street has been introduced. This was done in this case. And the time and place where the committee would meet to consider it was fully set forth. The objection which the Court found to the notice, was, that the ordinance in the advertisement was described by its title, and that the title stated that the street was to be paved with " sheet asphalt," whilst the body of the ordinance as said before stated that it was to be paved with "sheet asphalt or partly with sheet asphalt and partly with vitrified brick." This the Court held to be misleading. If the appellees had taken the trouble to go to the City Hall and look at the ordinance, they would have seen just what materials were mentioned in the body of it. And the fact that they did not know exactly what the ordinance contained, was due solely to their neglect in following the subject up after the notice was published. If they were misled, they were misled by their own negligence and default; and both the title of the ordinance and the notice of the introduction of the ordinance fully complied with all that the law required them to contain. It was admitted by the Court below that if the words " sheet asphalt " had been left out of the title, so that it would have read ".An ordinance to repave and recurb St. Paul street between Twenty-fifth and Thirtieth streets" without saying anything about material, that the title would have been perfectly good; and if so, that the notice would have been perfectly good. We cannot see how the use of those two words can invalidate both the ordinance and the proceedings of the City Engineer under it.

With reference to the third objection, that the council had no right to delegate to the City Engineer the discretion whether the street should be paved with asphalt, or partly with asphalt and partly with vitrified brick, we would refer the Court to

*Mayor and City Council* v. *Scharf*, 54 Md. 7, where the Court upheld the discretion given to the City Engineer to decide whether a street should be recurbed wholly or only partially; saying, "This is a necessary discretion in a workman employed to do a work."   See also *Mayor and City Council* v. *Moale*, 61 Md. 239.

*David Stewart* (with whom was *Edwin J. Farber* on the brief ), for the appellees :

The parties assessed, moved the Court to declare the whole ordinance null and void : (1.) Because the subject of the ordinance was not properly set forth in its title—the title referring only to *asphalt* paving and not to *vitrified brick* paving at all. (2.) Because no proper notice was given before the passage of the ordinance—the notice referring to the ordinance merely as an ordinance for *asphalt* paving.   (3.) Because the ordinance delegates to the City Engineer the power to decide which of two distinct classes of pavement can be used—which decision is one that rests in the Mayor and City Council alone.

This motion was overruled and the parties assessed took an appeal.   In his oral opinion JUDGE DOBLER stated that instead of holding the whole ordinance invalid because its title did not cover the vitrified brick provision, he would hold the vitrified brick provision nugatory and void as not being covered by the title of the ordinance ; which view also met the objection as to the delegation of authority to the City Engineer.   The parties assessed accordingly moved to quash the proceedings of the engineer, which motion was sustained and the proceedings were quashed and set aside with costs, and the city took an appeal.

PROPOSITION : *Where the body of an ordinance provides for the paving of a street with either of two distinct materials, like brick and asphalt, no sufficient notice of this ordinance is given if the notice describes it as an ordinance for paving with one material, such as asphalt ; and the title to such an ordinance, which likewise refers to only one material, such as asphalt, is defective, either rendering the ordinance void or nullifying that part of the ordinance which refers to the material not mentioned.*

The notice given in this case was that an ordinance to pro-
vide for the grading and paving with *sheet asphalt* had been
offered.    The title of the ordinance in question is, "An ordi-
nance to provide for the grading and paving with *sheet asphalt,
&c.*" . The City Engineer's advertisement for proposals is for
proposals for the paving of St. Paul street with "sheet asphalt
and vitrified brick."

The accepted bid on which  the assessment is founded is for
the laying of  more cubic yards of vitrified brick than of
asphalt.    The kinds of paving material which may be used on
a street, such as cobble stones, belgian blocks, wooden blocks,
asphalt blocks, sheet asphalt and vitrified brick, are fully
within the knowledge of the community at large, and this
Court will take judicial notice of these several distinct kinds
of pavement.    We would be no more expected to prove that
brick and asphalt are not the same, than one would be required
to prove that a cow was not a horse, or that a billiard table
was not a faro table, as decided in *State* v. *Price*, 12 Gill &
Johnson, 260, 263.

It is also notorious that while sheet asphalt is a pavement
used all over the world and when properly laid is considered
the very best pavement in existence, vitrified brick has nowhere
been generally adopted, it not having been found durable.  Large
amounts of money are, however, invested in manufactures of vit-
rified brick, and large amounts of money are being spent for the
purpose of introducing this paving material.    If, for political or
disingenuous reasons certain persons influential in the wording
of an ordinance, should desire an opportunity to introduce vit-
rified brick without the knowledge of the parties to be as-
sessed for the paving, they could find no better way than to
word a notice and an ordinance in the way the notice and ordi-
nance in this case are worded.    If the ordinance has been one
merely for *"paving St. Paul street,"* without stating the mate-
rial, residents might have been put upon their guard as to the
kind of pavement to be used, but the mention of *asphalt* and
of asphalt alone is admirably calculated to disarm suspicion
and anticipate objection.    It is therefore contended that the

notice given in this case does not comply with the intention of
the City Council as exhibited in Article 48, section 61A, be-
cause from reading this notice one would suppose that asphalt
alone was to be used.

The notice complied with the title of the ordinance, and pos-
sibly if the ordinance beneath that title is valid and effective,
the notice may be held to have been sufficient, but the argu-
ment as to the notice presents with great force the moral rea-
sons of the defect in the title.

In *State* v. *Archer*, 73 Md. 44, and *Lucas* v. *McBlair*, 12 G.
& J. 1, the title was used to construe the Act, very much as the
title to this ordinance might possibly be used if not to entirely
nullify the action of the City Engineer, at least to limit that ac-
tion to the choice of vitrified brick for gutters or small parts
of the pavement.   But from any point of view, we respectfully
contend that the distinction between paving a street with vit-
rified brick and with asphalt is a vital distinction, and that vit-
rified brick cannot be used under the ordinance in question in
the way in which the City Engineer arranged to use it.   In one
case alone has this Court considered this point as made against
a paving ordinance.   In *Raymo's case*, 68 Md. 569, the ordi-
nance provided for the use of Camp's process, and it was
alleged that the City Commissioners gave out a contract for a
different process.   The Court held that there was no substan-
tial difference, but the argument in the case assumed that if
there had been a substantial difference, such as the difference
between brick and asphalt, the action of the City Commissioner
would have been void, and the assessment could have been
quashed.

PROPOSITION : *The Mayor and City Council of Baltimore
cannot, under its powers to provide by ordinance for the paving
of any street, delegate to its City Engineer the power to decide
what kind of payment shall be laid.*

The city in the trial below used the argument *ad absurdam*,
saying that if the city could not authorize its engineer to de-
cide between brick and asphalt, it could not authorize him to
decide between different kinds of asphalt, and that the City

Council would therefore be limited to some one kind of asphalt and competition would be made impossible. This same argument can be used with equal force on the other side. If the City Engineer can be allowed to decide whether vitrified brick shall be used instead of asphalt, he can be allowed to decide in the same way with reference to cobble stones, or oyster shells, or wooden blocks, or any paving material. In such case the people to be assessed for the cost of the pavement could never know what they would be called upon to pay for. There is a rational, well-defined, middle position which is discussed in *Mayor* v. *Scharf*, 54 Md. 499, 521. In that case the Court of Appeals decided that the city could leave to the City Commissioners the determination, when repaving was being done, of the places where the curbing needed replacing; but in this case it is also decided that the Mayor and City Council could not leave it to the City Commissioner to determine how the property adjoining the street to be paved should be assessed, whether according to area, according to frontage, or according to the value of the property. The law at that time did not provide as it does now that the City Council shall determine this rule or basis (Acts of 1898, page 261), as appears in 54 Md., page 523. The reasons given by the Court in that case, for holding that ordinance invalid, apply fully to this case and substantially recognize this rule:

The person who is ultimately to pay the expense of paving is entitled to the judgment of the City Council upon the question of what kind of pavement shall be used, because this may materially affect the value of the improvement and the amount of the expense. *Dillon Mun. Corp.*, 596; *Hydes* v. *Joyes*, 4 Bush. 464–8–9; *Ruggles* v. *Collier*, 43 Mo. 359, 365; *St. Louis* v. *Murphy*, 43 Mo. 395; *Birdsall* v. *Clark*, 73 N. Y. 73, 77.

The fact that vitrified brick costs only *a little more* than asphalt does not affect this principle. If the ordinance had allowed the majority of the persons interested to decide which kind of pavement should be used, and in the absence of this decision had left this matter to the discretion of the City Engineer, there might have been no improper delegation of power. *Moale's case*, 61 Md. 224; *Hitchcock* v. *Galveston*, 96 U. S. 341.

We, therefore, contend that whether because this ordinance is wholly void, or because it does not authorize a vitrified brick pavement, the proceedings of the City Engineer have no validity or effect and the assessment made cannot be collected. This is not a mere technical contention. The assessment was made per front foot against a small house fronting 15 feet on Twenty-sixth street and was measured against 74 feet, the depth of the house on St. Paul street; so that this assessment is many times as great as the assessment against much larger and more valuable houses on the same street. As a matter of fact, the paving of St. Paul street with an expensive pavement will not add one dollar to the value of the property upon which the assessment questioned in this case is made; and it would seem, from the case of *Norwood* v. *Baker*, 172 U. S. 269, that no statutory provision keeping from a jury the determination of the question of *actual benefits* can be constitutionally valid.

McSHERRY, C. J., delivered the opinion of the Court:

There are two appeals in this record. One was taken by the Mayor and City Council of Baltimore from a judgment of the Baltimore City Court quashing certain proceedings of the City Engineer in relation to the proposed paving of St. Paul street; the other was entered by Alice Gerry Stewart and David Stewart from a judgment of the same Court refusing to declare invalid an ordinance directing St. Paul street to be paved. Practically the same controlling question lies at the foundation of each case, though there are, in addition, minor inquiries suggested as applicable to the second which do not seem to have been specifically ruled on below. One opinion, however, will be sufficient to dispose of both appeals. The proceedings of the City Engineer were quashed upon one of the grounds which Mr. and Mrs. Stewart rely on to invalidate the ordinance. If there was error in quashing these proceedings on that ground, then there was no error in refusing on the same ground to strike down the ordinance. So we will proceed at once to inquire whether the judgment from which the city appealed should be affirmed.

By Ordinance No. 50 of 1900, passed pursuant to the General Paving Ordinance, contained in Article 48 of the Baltimore City Code of 1893, provision was made for the paving of St. Paul street between Twenty-fifth and Thirtieth streets. After the decision by this Court of the case of *Ulman* v. *Mayor and C. C. of Balto.*, 72 Md. 587, wherein it was held the assessments levied upon the owners of abutting property to pay for the paving of streets were invalid if levied without notice to the persons affected, or without an opportunity afforded to them to be heard, the Mayor and City Council provided by a general ordinance an elaborate plan of procedure to be followed thereafter whenever street paving was to be done. Adequate provision was made for giving ample notice to every individual interested in the subject, or who might become chargeable with any part of the cost of the improvement; and the notices required to be given were, *first*, as to the pendency of an ordinance providing for the paving of a particular street; *secondly*, as to the apportionment of the cost of the paving; and *thirdly*, as to the right of each interested party to appeal from the findings of the City Engineer to the Baltimore City Court. The first of these notices is required to be given through the press after an ordinance has been introduced and before it has been acted on by the City Council, and the object of it is to warn all persons who may be affected by the measure, should it be adopted, to appear before the Joint Standing Committee on Highways and there contest the passage of the ordinance if they desire to do so. The second notice, also given through the press, is issued by the City Engineer and warns all persons that they may appear before him on a designated day and then and there controvert the apportionments made by him; whilst the third public notice is given by the City Register and informs all persons interested in the paving of the particular street, that they may appeal within thirty days from the apportionment made by the City Engineer to the Baltimore City Court, where the questions presented by the appeal can be tried by a jury, if a trial by jury be claimed. These provisions of the General Ordinance, contained in Art. 48 of the City Code, grat-

ify all the requirements as to notice and hearing which in *Ul-
man's case* were said to be necessary to give validity to the
assessment against an individual for the cost of paving a public
thoroughfare.    Each proprietor fronting on any street to be
paved is thus afforded an opportunity to litigate the passage of
an ordinance providing for the paving of that street ; he is also
given a hearing before the City Engineer upon the question as
to whether the amount assessed against him for the improve-
ment is excessive or erroneous ; and he is finally given an ap-
peal to a Court of law where the same question may be deter-
mined by a jury.    "If the Legislature provides for notice to
and hearing of each proprietor, *at some stage of the proceedings*
upon the question what proportion of the tax shall be assessed
on his land, there is no taking of his property without due pro-
cess of law."    *Ulman* v. *Mayor, etc.*, 72 Md. 593; *Spencer* v.
*Merchant*, 125 U. S. 345; *Paulson* v. *City of Portland*, 149 U.
S. 41.

We gather from the argument and the record that the spe-
cific ground upon which the proceedings of the City Engineer
were quashed was that the title of Ordinance No. 50, of 1900,
declared that the paving was to be done with sheet asphalt
whilst the body of the ordinance contains a proviso permitting
the use of vitrified bricks in lieu of asphalt in the gutters and
upon such other portions of the street as in the judgment of
the City Engineer shall be necessary or desirable.    The foun-
dation of this objection is two-fold : First, that the title of the
ordinance is misleading in this that the ordinance embraced a
subject not disclosed by the title ; secondly, that the ordi-
nance left to the discretion of the City Engineer the selection of
material with which the paving was to be done, whereas that
was a matter to be determined solely by the City Council.

When it is proposed to pave a particular street and an ordi-
nance has been introduced to provide for doing the work, *sec.
61A, Art. 48 of the City Code*, requires public notice to be
given "of the introduction of said ordinance, and that any and
all persons interested therein will be heard upon any matter
relating thereto by the Joint Standing Committee on High-

ways at the time and place to be designated in said notice."
The City Code does not require the *provisions* of the particu-
lar paving ordinance to be published, but simply directs notice
of the fact that an ordinance to pave a designated street has
been introduced.    Upon turning to the record it will be seen
that the notice which was in fact given, reads in part as fol-
lows:  "Pursuant to the provisions of sec. 61A, Art. 48 of
the Baltimore City Code of 1893, by order of the Joint Stand-
ing Committee on Highways, notice is hereby given to all
persons interested therein that an ordinance has been intro-
duced into the City Council and referred to the Joint Standing
Committee on Highways, before which committee it is now
pending, the title of which is as follows : 'An ordinance to
provide for the grading and paving with sheet asphalt and
curbing all that portion of St. Paul street from the north side
of Twenty-fifth street to the south side of Thirtieth street.' "
Then comes a statement that by the provisions of the ordi-
nance the cost of the work is to be paid for by assessing the
whole expense on the abutting property in proportion to the
frontage of said property, except the cost of paving the cross
streets, which is to be paid by the city.    The notice then pro-
ceeds : "All persons in any way interested in the subject-mat-
ter of said ordinance are hereby notified that the Joint Stand-
ing Committee on Highways will be in session at the City
Hall, first branch committee room, Baltimore, on Wednesday,
March twenty-first, nineteen hundred, at three o'clock P. M.,
for the purpose of considering said ordinance and giving a
hearing to all those who may appear before them relative
thereto."    The first section of the ordinance is set out in the
margin.*    It will be observed that it directs the City Engineer

---

* Section 1. Be it ordained, by the Mayor and City Council of Balti-
more, that the City Engineer be and he is hereby authorized and directed
to have all that part of St. Paul street, from the north side of Twenty-fifth
street to the south side of Thirtieth street, graded and paved with Trini-
dad Lake, Alcatraz or Bermudaz sheet asphalt or other sheet asphalt
which, in the opinion of the City Engineer, is equally as good, and curbed
or recurbed where necessary, the curb to be six-inch granite, Gneiss, or
other stone acceptable to the City Engineer, the paving to be upon a con-

to have the street graded and paved with Trinidad Lake, Alca-
traz or Bermudaz sheet asphalt or other sheet asphalt which,
in the opinion of the City Engineer is equally as good ; it des-
ignates the kind of curbing and then in parenthesis occurs the
proviso in relation to the use of vitrified brick for the gutters
and in such other portion of the street as in the judgment of
the City Engineer may be necessary or desirable.

Now in what way is the title of the ordinance misleading,
and in what manner does the title conflict with that provision
of the city charter which declares that " every ordinance en-
acted by the city shall embrace but one subject, which shall
be described in its title." *Sec. 221, ch. 123, Act 1898.* It is
not pretended that the ordinance as passed is couched in pre-
cisely the language in which it was phrased when introduced..
It is altogether possible that the proviso was inserted either by
the Joint Standing Committee or after the ordinance had been
reported back from the committee to the Council. It is mat-
ter of common knowledge, which every person must be
assumed to be acquainted with, that bills and ordinances are
open to amendment on their passage through legislative bodies ;
and that they are consequently apt to differ materially when
finally adopted from the form in which they were when intro-
duced. This being so, the fact that only asphalt was mentioned
in the title was no reason for any one supposing that the ordi-
nance when passed would confine the paving material strictly
and exclusively to asphalt. The notice having advised all
parties interested that an ordinance had been introduced, it
became their duty to appear at the time and place designated
if they wished to contest the passage of the ordinance or de-
sired to have its provisions varied. The public notice was not
intended to give information of the contents of the ordinance—

---

crete foundation six inches in thickness ; (provided, however, that the use
of vitrified brick in lieu of asphalt shall be allowed in the gutters and
upon such other portion or portions of said street, as in the judgment of
the City Engineer, it shall be necessary or desirable); all of the said work
shall be done in accordance with specifications to be prepared by the city
engineer, who shall advertise for proposals for doing the entire work.

it could not do so for the reason already suggested, that the ordinance was liable to be amended—but the object of the notice was merely to warn parties whose property abutted on the street proposed to be paved that an ordinance providing for that paving was pending.   The fact that it was only a *pending* ordinance was notice in itself that its provisions were not necessarily or even probably final ; and any one relying on its provisions as final or depending on its title as indicating what its provisions would ultimately be, if misled at all was misled by his own failure to heed the notice and not by the terms of the notice as published.

But it is said the title violates the charter in this that the subject dealt with in the ordinance is not disclosed in the title. This provision of the charter is similar to *sec. 29, Art. 3, of the State Constitution,* which has been frequently under discussion in cases decided by this Court.   What has been ruled in those cases in reference to the constitutional provision will apply to the like clause of the charter.   It never has been understood that the title of a statute should disclose the details embodied in the Act.   It is intended simply to indicate the subject to which the statute relates.   The subject of this ordinance was the paving of St. Paul street between certain *termini.*   The material to be used in doing the work was an incident or detail and not the subject.   When the general subject is indicated no matters of detail need be mentioned in the title.   " The primary object of the provision undoubtedly is to exclude all foreign, irrelevant or discordant matter from the statute, and to confine the statute to the single subject disclosed in the title."   *Phinney* v. *Shepard Asylum,* 88 Md. 636.   The use of vitrified bricks where sheet asphalt would not be serviceable does not detract from the scheme to pave with sheet asphalt, any more than the use of stone or iron lintels and sills would prevent a house built of brick from being properly described as a brick house.   The pavement is still an asphalt pavement though the gutters on either side of the street and the space between the car tracks be paved with some other material.   The use of bricks in these places is not foreign to the purpose of the ordinance,

and the proviso giving to the City Engineer authority to substitute bricks for asphalt at the points indicated is neither irrelevant nor discordant matter at variance with the scheme and purpose of the ordinance as disclosed by its title. The position assumed in the Court below, and sustained by the ruling appealed from, would, if finally sanctioned, absolutely preclude the use of any material except asphalt, no matter how urgent and apparent the necessity for employing in part some other paving material might be in the proper construction of the work. If under the pretext of laying an asphalt pavement a totally different and much more expensive one were put down, another question would be presented; but to say, when there is a title which indicates that an asphalt pavement is to be made, a provision cannot be included by which in the correct construction of such a pavement bricks may be employed when necessary to give stability and permanency to the work, is to carry the doctrine far beyond any decided case, and, if accepted as the right doctrine, it would lead to the result that there could by no possibility be a valid ordinance unless every detail of its various provisions were scheduled in the title. This would convert the clause of the charter, which was intended to prevent vicious legislation being cloaked under an innocent title, into a snare that would practically defeat all legislation. As said by this Court in *Mayor, etc., v. Reitz,* 50 Md. 579. " Whilst the title must indicate the subject of the Act, it need not give an abstract of its contents, nor need it mention the means and methods by which the general purpose is to be accomplished." See also *Trustees Catholic Cathedral Cemetery v. Manning,* 72 Md. 120 and 133.

The remaining ground relied on for quashing the proceedings of the City Engineer, is, that the ordinance delegated to him a discretion as to whether the street should be paved with sheet asphalt or with vitrified bricks. Whilst this objection does not appear to have been passed on by the City Court, it is in the record and has been argued and must be disposed of, and it must be disposed of because if well taken it would support the judgment appealed from. The objection as made as-

sumes the existence of a provision in the ordinance which is not in fact contained there. There is no delegation to the City Engineer of a power or discretion to decide "whether the street shall be paved with sheet asphalt or with vitrified brick." Undoubtedly the broad and unrestricted delegation of such a power would be unlawful. The power to determine what material shall be used in paving a street is a legislative power and cannot be transferred by the City Council to any one else; and if the ordinance undertook to do this it would be palpably invalid, *Scharf* v. *Mayor, etc.*, 54 Md. 521, unless the conditions exist which were present in *Mayor, etc.*, v. *Moale*, 61 Md. 239. What the ordinance in controversy does is quite different. The City Council distinctly selected asphalt as the material with which the street was to be paved, and it merely permitted the City Engineer to use vitrified bricks in lieu of asphalt in the gutters and upon such other portions of the street as in his judgment might be necessary or desirable. Both materials were designated by the ordinance, and the only discretion given the City Engineer was with respect to the use of one in preference to the other of these two at particular places. This was a discretion not in regard to the adoption of the material with which the paving should be done, but with respect to the details of doing the work, "a necessary discretion in a workman employed to do a work," as this Court expressed it in *Scharf's case*, 54 Md. 522. In the progress of the work if it were found necessary or desirable to lay the gutters with brick or to pave between the car tracks with them instead of with asphalt, the power to determine that it should be done had to be lodged somewhere, and placing the power in the hands of the City Engineer who is charged with the general supervision of the work is not a delegation to him of a legislative authority to decide whether the street should be paved with sheet asphalt or with vitrified bricks.

From what we have said it will be seen that we do not concur in the conclusion reached by the learned and careful Judge of the City Court on the motion to quash the proceedings before the City Engineer. The reasons assigned to support that mo-

tion are untenable. The proceedings should not have been quashed, and unless there is something suggested on the other appeal to show that the ordinance itself is invalid, the judgment appealed from by the Mayor and City Council must be reversed. So much for the first appeal.

Now as to the second appeal. What has been already stated is sufficient to answer the specific grounds relied on in the motion to set aside and declare Ordinance No. 50 null and void. But in addition to these specific grounds two others are asserted in the petition which prayed an appeal from the City Engineer to the Baltimore City Court ; and these will now be considered. They are, *first*, that St. Paul street is now paved with cobble stones and needs no other pavement; and *secondly*, that the apportionment of the cost by the front-foot rule is inequitable and unjust. The cases of *Mayor, etc.*, v. *Scharf*, 54 Md. 513; *Mayor, etc.*, v. *Johns Hopkins Hospital*, 56 Md. 27; *Alberger, etc.*, v. *Mayor, etc.*, 64 Md. 6, fully dispose of these objections. In the case last named an ordinance directing a part of Baltimore street to be repaved with an improved pavement was involved, Amongst the objections to that ordinance it was urged that there was no necessity for having the work done. But this Court thus dealt with the objection : "Under the power delegated by the *Act of 1874, ch. 218*, the discretion exercised by the City Council in regard to the propriety or necessity of the improvements provided for by the ordinance cannot be controlled by the Courts. It is only where the power is exceeded or fraud is charged and shown to exist, or where there has been a manifest invasion of private rights, that the remedial and corrective power of the Courts can be successfully invoked." An apposite quotation is then made from JUDGE DILLON's admirable work on Municipal Corporations, and the opinion proceeds : "And the application of this principle to this case effectually disposes of the contention on the part of the complainants, not only with respect to the manner of doing the work, but also with respect to the necessity or expediency of having it done. Whether there was a real necessity or a good reason, for the removal of the

old pavement and replacing it with belgian blocks, was a matter entirely within the discretion of the City Council and over the exercise of that discretion the Courts have no power of review." *64 Md. 6 and 7.*

Now, as to the front-foot rule of apportionment of the cost of the improvement.   Prior to the *Act of 1874, ch. 218*, the front-foot rule was prescribed by statute and this had prevailed between 1782 and 1860 under various Acts of Assembly, and in 1860 until 1874 under *secs. 845 and 847, Art. 4, Code Public Local Laws.*   The repeal of these last-named sections, by the Act of 1874, abrogated this rule of apportionment so far forth as it had been established by legislative enactment, but no farther, whilst the Act of 1874 gave to the city an unqualified discretion to adopt by ordinance the same or any other rule by which to ascertain the amount to be paid by each abutting proprietor.   Under this power the general paving ordinance established, or rather re-established the front-foot rule.   The validity of that rule has been recognized by this Court in a number of cases since the Act of 1874 was adopted.   Without referring to all of them we name *Alberger's case*, 64 Md. *supra*.   What was said in *Ulman's case*, 72 Md. 594 of the arbitrary character of that rule had relation to the question then before us, not the *validity* of the rule, but the hardship of its application to a case where the party charged with the payment of the assessment has had no opportunity to be heard.   It may be well to note in passing that the *Ulman case* overruled previous cases only in so far as those cases had held that notice and an opportunity to be heard were unnecessary to the validity of such an ordinance; and the effect of overruling those cases was to reassert the doctrine announced in *Scharf's case*, 54 Md. 499.   The case at bar is different from *Ulman's case*, because here ample provision was made for giving all parties interested an opportunity to be heard before the ordinance was passed, and therefore to contest the application or adaptation of the front-foot rule to this particular paving if they saw fit to antagonize the rule.

But there is another reason why the front-foot rule cannot

be questioned in these proceedings. The ordinance fixing that rule was in force when the new city charter was adopted and by *sec. 3* of that character—*Acts of 1898*, ch. 123—" All ordinances of the Mayor and City Council of Baltimore now in force and not inconsistent with this Act shall be and they are hereby continued until changed or repealed ;" that is changed or repealed by the municipality. This enactment amounted to a legislative reaffirmance of the rule, *Hooper* v. *New*, 85 Md. 565; though the right to abrogate that rule and to substitute some other in place of it was reserved to the municipality. We cannot, therefore, say that the rule in these circumstances is inequitable, unlawful or unjust.

This disposes of all the questions raised on the second appeal and as none of them is sufficient to invalidate the ordinance, the refusal of the Court to declare it void was clearly right and must be affirmed.

Upon the whole case the judgment in No. 94—the appeal of the Mayor and City Council—will be reversed ; and that in No. 95—the appeal of Alice Gerry Stewart and David Stewart—must be affirmed and the record will be remanded to the Court below so that a new trial may be had. And it is so ordered.

> *Judgment in No. 94 reversed with costs above and below and new trial awarded. Judgment in No. 95 affirmed with costs above and below.*