# THE JOHNS HOPKINS CLUB BUILDING COMPANY OF BALTIMORE CITY

*vs.*

## THE MAYOR AND CITY COUNCIL OF BALTIMORE AND WILLIAM C. PAGE, CITY COLLECTOR.

*Municipal corporations: Baltimore City; discretionary measures; when courts will not interfere. City pavements: general ordinances affecting—; particular footways; condition of—; a ministerial question. Ordinances No. 102 of 1912 and No. 7 of 1915, requiring repavement with cement, etc.; right of city to do the work and assess cost to property as taxes; failure to provide notice or hearing as to cost and assessment unconstitutional.*

Not every difference of opinion between a private citizen and a municipal corporation is justifiable in the courts; and where a municipal official, in the performance of his duty, must exercise judgment and discretion, the courts will not review the manner of its exercise, where neither fraud nor bad faith is alleged.                                               p. 285

Whether a particular footway is or is not out of repair, or is so worn as to require it to be relaid in part or in whole, is a matter too vast in detail, in a large city, to be passed on by a separate ordinance in each case.                          p. 285

To pass upon the condition of the sidewalks of a large city is a ministerial function rather than a legislative one, and is properly committed to a municipal official such as city or highways engineer, or an appropriate department.          p. 285

In considering the constitutionality of a municipal ordinance, the test is to be found, not by what has been, but by what might be done, by its authority.                    p. 286

Article 35 of the Baltimore City Code of 1906, sections 21 and 22, as amended by ordinances of the Mayor and City Council, Nos. 102 and 7 of 1912 and 1915, respectively, authorized the City Engineer to repave with cement, stone or brick the pavement of any property owner who shall have failed to pave the same in the manner and within the time prescribed in a notice given as provided for by the ordinance; the cost of such repaving by the City Engineer (including the cost of advertising and the addition of 3% for the cost of collection) is made a lien upon the property, to be recovered as are other taxes on real estate; *Held,* that these ordinances were unconstitutional, in that they made no provision for notice to the owner of the amount of the tax so to be imposed upon him or any provision for a hearing with regard thereto, or for any appeal from the amount so levied and assessed against his property.        p. 288

*Decided February 2nd, 1917.*

Appeal from the Circuit Court of Baltimore City. (Bond, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Urner, Stockbridge and Constable, JJ.

*Edward Duffy* and *William C. Coleman* (with a brief by *Semmes, Bowen & Semmes* and *Edward Duffy*), for the appellant.

*Alexander Preston, Deputy City Solicitor,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The Johns Hopkins Club Building Company is the owner of a lot of ground at the corner of Monument and Howard streets, the building on which is occupied and used as a club house by the Johns Hopkins Club.

It appears from the evidence that on the 21st of October, 1915, the following notice was left on the premises:

"City Engineer's Office, Baltimore.

Notice to Repair and Renew Footway.

Inspector's Report No. 14353.        Oct. 13, 1915.

To Johns Hopkins University Club, S. E. Cor. How-
ard and Monuments Streets:

You are hereby notified to repave with cement foot-
way and put all surface drains under same, in front
and side of house or lot No.    , S. E. Cor. Howard and
Monument Streets between          and 227 W.
Monument.

Remarks: Second and final notice.

The above work must be started not later than Oct.
18, 1915.

R. M. Cooksey,
Highway Engineer."

Nothing was done by the Building Company by way of a compliance with this notice, and on December 18th another notice was given in these terms:

"City Engineer's Office, Baltimore.

Notice to Repair and Renew Footway.

Inspector's Report No. 25000.        Dec. 16, 1915.

To Geo. Cator (Prest.), Continental Bldg.:

You are hereby notified to repave and cement foot-
way and put all drains under same, in front and side
of house or lot No. 227 W. Monument St., between
and

Remarks: S. E. Cor. Howard and Monument.

The above work must be started not later than Dec.
27, 1915.

R. M. Cooksey, City Engineer,
Highway Engineer."

As in the previous instance, the officers of the Building Company did nothing in the way of compliance. Thereupon the City caused the pavement of the footway to be relaid in cement, and rendered a bill therefor, for the sum of $278.39. This bill was also certified to the City Collector of Taxes, and by virtue of Section 23 of Article 35* of the ordinances of the Mayor and City Council of Baltimore, became a lien upon the property, rendering it liable to be sold.

The bill in this case was filed to enjoin the collection of this tax, and the infliction of the penalties provided by the ordinance under which the municipal officials assumed to act.

The bill avers the footway in question to have been in good condition. This is denied by the answer, and much of the testimony taken related to this phase of the case. The evidence is flatly contradictory, but that question is not one to be determined by the courts in the absence of any allegation of fraud or bad faith. Where neither of these are alleged, the question is one of opinion merely.

It is not every difference of viewpoint between a citizen and a municipal corporation which is justifiable in the courts, and where the performance of his duty involves the exercise of discretion or judgment on the part of a municipal official, the courts will not review the manner of the exercise where neither fraud or bad faith is alleged.

Whether a particular footway is or is not out of repair or so worn as to require it to be relaid in part or in whole, is a matter too vast in detail to be passed on, in a city the size of Baltimore, by separate ordinance in each case. That is a ministerial function rather than a legislative one, and as such is proper to be committed to a municipal official, such as a city engineer or highway engineer, or an appropriate department. *McQuillan on Municipal Corporations,* sec. 1822; *Barber Asphalt Co.* v. *Tomlinson,* 141 Mo. App. 422.

---

*See the Balto. City Code of 1906, p. 1099.

The main ground relied on by the appellant is that the ordinance under which Mr. Cooksey, as highway engineer, assumed to act, is void, and, therefore, all proceedings under it are invalid, and ineffectual to place a lien upon the property of the appellant, or render it liable to the city for the cost of the work done.

In considering this phase of the case it is always to be borne in mind that the test is to be found not by what has been done under the ordinance, but what may, by its authority, be done. *Ulman* v. *Baltimore,* 72 Md. 587.

The power of the Mayor and City Council of Baltimore over the streets and highways of the city is to be found in section 6 of the City Charter, in which it is provided that

"The Mayor and City Council of Baltimore shall have full power and authority * * * to pass all ordinances necessary for the grading, regulating, paving and repairing the footways in the streets, lanes and alleys of the city and impose a tax on any lot fronting on any paved street, lane or alley for the purpose of grading, regulating, paving or repairing footways in front thereof, or compel by fine or otherwise the owner or proprietor of any lot to pave or repair the footway in front thereof, agreeably to the ordinances to be passed by it."

The ordinances of the Mayor and City Council adopted in execution of the power thus conferred are grouped together in the City Code of 1906, in Article 35, and have been twice amended by ordinances, approved respectively (No. 102) May 10, 1912, and (No. 7) June 26, 1915. Sections 21 and 22 as they now stand, are as follows:

"21. The City Engineer shall cause notice of the order provided in section 28 hereof to be given to the proprietor or proprietors of the lot or lots in front of which a footway is required to be filled up, dug down, paved or repaved in manner following, that is to say: the said order, or a copy thereof, may be left at any house on such lot, or served personally on the pro-

prietor or proprietors, or his, her or their tenant, agent
or guardian, or left at his, her or their residence, or a
copy of such order may be published in one or more of
the newspapers of the city and posted or set upon the
premises, notice in any of which modes shall be deemed
sufficient.

"22. If the proprietor or proprietors of any lot or
lots fronting on any paved street, lane or alley, shall
neglect or refuse to fill up, dig down, pave or repair the
footways in front of such lot or lots, for the space of
ten days after service of a printed or written order,
or copy thereof, in manner as aforesaid, to be reck-
oned in case of publication in a newspaper from the
date of first publication, then the City Engineer is
authorized and directed to have the said footways filled
up, dug down, paved or repaved with cement, stone or
brick, in the discretion of the City Engineer, in a suffi-
cient and substantial manner, or repaired in such man-
ner as the City Engineer shall think proper; and a tax
is hereby imposed upon each respective lot in front of
which the footways shall have been so filled up, dug
down, paved or repaved, equal to the expense of such
filling up, digging down, paving or repairing (includ-
ing therein the cost of advertising in cases where ad-
vertising is necessary), with an addition thereto of 3
per cent. for the cost of collecting."

The notice referred to in the sections quoted is the notice
from the City Engineer or Highway Engineer to an owner
to repair or repave the footways along the front or side of his
property, but in neither of these, nor in any other section
of the City Code, or ordinances applicable to the footways, is
there any provision whatever for a notice to the owner of the
property of the amount of the tax to be imposed upon him,
or any provision for a hearing with regard thereto, or any
appeal provided upon the assessment made or tax levied.
In this respect these provisions differ materially from other
similar city ordinances.

In the case of *Gomeringer* v. *McAbee,* 129 Md. 557, in construing the ordinance requiring citizens to make connection with the sewer system of Baltimore, this Court pointed out that the ordinance then under consideration appointed a day for the property owner to show cause why charges should not be made against him, and with the right of appeal to the City Court, as in the case of new assessments. This is different in a marked degree, therefore, from the ordinance now being considered, which makes no provision of any kind of a notice as to charge or tax to be imposed upon the owner.

Under the very terms of sections 22 and 23, an amount which may or which may not represent the cost of doing the work is not merely imposed upon the owner, but made a lien upon his property as fully as such a lien could be created by a judgment of a Court of law, and yet this is accomplished with no provision for a hearing or any opportunity to the person whose property is thus to be affected to be heard in opposition to the charge or tax and lien to be created.

There is hardly a State in this country in which questions of similar character have not been raised. In Maryland it has frequently been considered by this Court, and there is not entire harmony of decision. In *Baltimore* v. *Scharf,* 54 Md. 499, the matter was fully and elaborately discussed in an opinion by JUDGE IRVING, from which, however, JUDGE MILLER dissented, and the case was again argued upon a motion for reargument in connection with the case of the *Johns Hopkins Hospital* v. *Baltimore,* 56 Md. 1; in which the opinion was written by JUDGE MILLER, and a dissent was filed by JUDGES ALVEY and IRVING. In the case of the *Hopkins Hospital* it was held that the requirement of notice had reference only to cases where a general assessment was levied.

Shortly after this came the case of *Alberger* v. *Baltimore,* 64 Md. 1, where objection was made to an assessment for the paving of Baltimore street from Greene to Gilmor with Belgian blocks, upon the ground that the ordinances made no provision for notice or opportunity to be heard before the

assessment was made against the property, and in deciding that case JUDGE ALVEY said that the question had been settled by the cases of the *Johns Hopkins Hospital* v. *Baltimore,* 56 Md. 1, and *Baltimore* v. *Scharf,* 56 Md. 50.

At this point a departure was taken in the view of this Court, when the case of *Ulman* v. *Baltimore,* 72 Md. 587, was decided. The opinion in that case was written by CHIEF JUDGE McSHERRY, and declares in precise terms: "We must return to the doctrine laid down in *Scharf's Case,* 54 Md. 499, and recede from the opinion overruling that case and asserting the opposite view."

The *Ulman Case* was very similar in many of its features to the case presented by the Record now under consideration, and is controlling in this case. So apt is it, that the opinion of the late eminent Chief Judge of this Court might well be transcribed as the opinion of this Court, and special reference is made to that opinion without quotation, which could serve no purpose but to uselessly lengthen this opinion.

There have been cases decided since the *Ulman Case,* with regard to which it is proper to say a few words. In the case of *Baltimore* v. *Stewart,* 92 Md. 535, the question of lack of notice or provision for notice in the ordinance was raised in regard to the paving of St. Paul street between 25th and 30th streets, but in deciding that case attention was called to the fact that a general ordinance of procedure in regard to taxation for repaving streets had been passed subsequent to the decision in the *Ulman Case,* in which ordinance provision was made for notice.

The principle now being considered, again received the attention of this Court in the *Monticello Co.* v. *Baltimore,* 90 Md. 428; and it was there said: "The Legislature can no more arbitrarily impose an assessment for which property may be taken and sold, than it can render a judgment without hearing; it is a rule founded upon the first principles of natural justice, older than written constitutions, that a citizen should not be deprived of his life, liberty or property

without an opportunity to be heard in defense of his rights, and the constitutional provision that no person shall be deprived of these without due process of law has its foundation in this rule."

Kindred questions were presented in the case of *Frostburg* v. *Wineland*, 98 Md. 239, and *Easton* v. *Turner*, 117 Md. 116. These cases, however, dealt rather with the attempted act of a municipality as being an arbitrary act as distinguished from one done in the exercise of a discretion, and relate, therefore, more particularly to the first of the considerations in this case than to the one now under discussion, and both recognize the corrective power of a Court of Equity to interfere in a proper case, such as the *Radecke Case*, 49 Md. 217, or where fraud or bad faith, or an arbitrary exercise of power amounting thereto, is attempted.

In the case of *Baltimore* v. *Gahan*, 104 Md. 145, this Court, speaking through JUDGE McSHERRY, said that the case of *Ulman* v. *Baltimore, supra,* had overruled the case of *Baltimore* v. *Hopkins Hospital,* on the question of notice, and it is manifest that if such was the effect of the *Ulman Case,* all cases which had been decided in reliance upon the case of *Baltimore* v. *Hopkins* were likewise overruled.

It will have been observed that three different kinds of pavement were named as alternatives in the ordinance dealing with footways, and it was intimated rather than argued, that it was beyond the power of the Mayor and City Council by ordinance to delegate to the Commissioner of Highways, the choice as between different materials, and there is some of the language in the case of *Baltimore* v. *Stewart, supra,* which would seem sufficient warrant for the intimation; but when writing the opinion in the *Gahan Case* five years later than the *Stewart Case,* JUDGE McSHERRY referred to the language used by him in the earlier case, as being *"obiter"* on the question of the selection of material, and in the *Gahan Case* distinctly sustained the committing to the Board of Awards a selection as between different materials after bids had been opened.

In the *Owner's Realty Co.* v. *Baltimore*, 112 Md. 477, the action was one to recover from an owner the cost of the removal of a nuisance. By the ordinance then being considered such recovery was to be had by suit, and the effect of this provision was, therefore, to give the owner his day in Court, where the propriety of the charge made against him could be fully heard and properly determined.

In deciding the *Ulman Case, supra,* special reliance was placed upon the decision of the Supreme Court of the United States in *Spencer* v. *Merchant,* 125 U. S. 345, with which decision that in the *Ulman Case* was made to conform. In varying ways the same question has been a number of times presented to the Supreme Court of the United States since, the last reported case being that of the *St. Louis Land Co.* v. *Kansas City,* 241 U. S. 430, decided in 1916, where it was held that if the legislative body provides for notice to and hearing of each proprietor at some stage of the proceeding, upon the question of tax which shall be assessed upon his property, there is no taking without due process of law.

It is not now intended to say that to enable a tax to be collected, provision must be made in every instance for a hearing in Court. There have been instances where boards or commissioners have been vested with *quasi judicial* powers, for a limited, clearly defined class of cases; but what is now decided is that unless there is a provision in the statute or ordinance which gives an opportunity to the owner of the property to be heard with regard to any tax or assessment levied upon his property, the same is invalid and not capable of enforcement.

The ordinances under which the Highway Engineer assumed to act in this case were without any such provision, and the decree of the Circuit Court No. 2 of Baltimore City, from which this appeal is taken, must be reversed and the case remanded, to the end that a final decree may be entered therein, in accordance with the views herein expressed.

*Decree reversed, with costs to the appellant. and cause remanded.*