## MAYOR AND COUNCIL OF EASTON *vs.* J. FRANK TURNER ET AL.

*Municipal corporations*: *power over streets; changing grade; sewers; injury to trees; to property of abutting property-owners. Injunctions*: *pleading; motion to dissolve—; hearing on bill and answer.*

Where a motion to dissolve an injunction is heard on bill, answer and testimony, and the bill shows a case entitling the plaintiff to the order, the injunction will not be dissolved unless the equity of the bill is denied by the answer.

p. 115

In such a case the defendant can not rely upon the testimony for the purpose of denying or disproving the equity stated in the bill, if the answer is not a sufficient denial of it.

p. 115

An injunction was filed against the Mayor and City Council of Easton to prohibit the construction of drains and curbing on a certain street, and from cutting down or injuring the shade or ornamental trees planted thereon; the bill alleged that the defendant was about to divert a large volume of surface water down the said street to carry off which, according to the plans proposed, large drains would be necessary, requiring very deep cuts, which would necessarily greatly injure, if not entirely destroy, the trees of the petitioner planted on the sidewalks; the answer in effect admitted the general purpose of changing the drainage as alleged, but neither affirmed nor denied the depth of the cuts required nor the injury to the trees; a preliminary injunction was granted; at the final hearing the city's plans, having been practically admitted to be improper, had been abandoned; the defendant made a motion that the injunction be dismissed; on appeal from an order of the Court making the injunction permanent, that order was sustained.        p. 117

But it was further held that the continuing of the injunction was not to be construed as prohibiting the appellant (the City of Easton) from regrading the street under a general plan for the proper improvement, even if in execution of such a

plan it should have to deepen the gutters and curb the street
and injuriously affect the trees.                              p. 117

If such result can reasonably be avoided municipal corpora-
tions should not arbitrarily or unnecessarily cut or destroy
trees, private property, planted on the side walk.       p. 118

Municipal authority (in changing the grades of the streets,
etc.) should not act ruthlessly without regard to the inju-
rious effects to be sustained by the abutting property owners.
                                                         p. 118

*Decided January 9th, 1912.*

Appeal from the Circuit Court of Talbot County, sitting
in equity, (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BURKE,
THOMAS and STOCKBRIDGE, JJ.

*James C. Mullikin* and *Wm. Mason Shehan,* for the appel-
lants.

*J. Frank Turner* (with whom was *John W. D. Jump* on
the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The bill in this case was filed by the appellees and Samuel
Norris against the appellant, but subsequently it was, with
leave of the Court, dismissed as to Mr. Norris without prej-
udice to the other plaintiffs. It prayed for an injunction to
prohibit the appellant from the construction of drains and
curbing on Goldsborough street between Harrison and Hanson
streets, in Easton, in the manner proposed as set out in the
bill, and from draining the water of Dover, Harrison and
Washington streets over and upon that part of Goldsborough
street and from cutting down or in any manner injuring the
shade and ornamental trees on it. A preliminary injunction
was granted, and after filing its answer the defendant made
a motion to dissolve it. On April 11, 1911, a decree was

passed making the injunction perpetual and the Mayor and
council were "perpetually enjoined from draining the water
on Dover, Washington and Harrison streets into Goldsborough
street as originally proposed by ordinance No. 198, and from
so lowering the curb and gutters on Goldsborough street as to
destroy or to injure in any manner the trees on said street
between Harrison and Hanson streets in said town of
Easton." This appeal was taken from that decree.

The bill and answer, when taken in connection with subse-
quent events, must to a great extent dispose of this appeal,
notwithstanding a large amount of testimony was taken. The
theory of the bill was that the defendant (appellant) was
about to divert large quantities of surface water from its
natural and usual course, direct its flow along certain streets
until it reached the corner of Harrison and Goldsborough
streets and then conduct it in an open drain on Goldsborough
street to Turner's alley, thence in a stream flowing across
the property of the complainants Turner and Jump. It is
alleged that in order to conduct the greatly increased volume
of water down Goldsborough street, between Harrison and
Hanson streets, it would, according to the plans of the town,
be necessary to deepen the drains from twelve to sixteen
inches, and in order to secure a proper foundation for the
drains it would be necessary to dig down eighteen inches
below the bottom of them—thus making cuts in the sides of
Goldsborough street to the depth of thirty-four inches—and
that the cutting of the drains would necessarily be very
injurious to, if not entirely destructive of the trees on the
sidewalks.

While the answer does not admit that the defendant pro-
posed to drain the water precisely as the plaintiffs alleged, it
does in effect admit a diversion of it from its accustomed
flow, its concentration and increased volume and emptying
it into the drain running through the Turner and Jump
properties. It says that "in order to secure a proper drain-
age of the water along said Goldsborough street it is nec-
essary to change and deepen the drains upon each side of

'said street, but (they) neither admit nor deny the depth alleged to be necessary" in the bill. They neither admit nor deny the injuries which the bill alleges the trees will sustain, by reason of the drains being made so deep, in order to carry off the large quantity of water.

The bill was filed on August 12th, 1909, and the answer on September 1st of that year. What is spoken of as resolution or ordinance 198, which had been passed by the Mayor and Council, seems to have given rise to the trouble. On December 21, 1910, an agreement of solicitors was filed by which it was agreed that the defendant had put in a storm-sewer for the accommodation of the water which was originally intended by resolution 198 to pass down Goldsborough street and down the culvert between Fountain's and Turner's properties into the stream. The present Mayor testified that he did not know what that resolution was until about the time the testimony was being taken in this case, and as he did not believe that was the scheme proposed by the engineers, who had made the plans several years before, and as he was opposed to carrying out that resolution, he recommended its repeal which was duly done.

The storm sewer in the opinion of the lower Court relieved the difficulty at present as to the diversion of the water, and it said that if it proved inadequate and resulted in flooding the plaintiffs' properties, they could then apply for an injunction under the principles announced in *Guest* v. *Church Hill,* 90 Md. 689. There would seeem to be but little room for doubt that the plan as proposed when the bill was filed might have resulted disastrously to the plaintiffs, and the appellant practically admits by its action that it was not a proper plan. Under the circumstances there can be no ground for complaint of the part of the decree that enjoined the defendant from draining the water as proposed by ordinance No. 198 and that is not now urged. It is strenuously contended, however, 1st, that the Court has no power to interfere with the exercise of the sound judgment and discretion of the municipal authorities as to the grading, draining and pav-

ing of the streets, inasmuch as it is empowered by the Legislature to act, and 2nd, that if the Court is ordinarily possessed of such right it should not have interfered in this case.

As the case is presented by the pleadings, the only reason for digging the drains or gutters on Goldsborough street so deep was to carry off the large quantity of water which the appellant proposed to divert from its regular course and to turn into that street. The bill so alleges and the answer in effect admits it. Inasmuch then as that plan has been abandoned, and it is practically admitted to have been an improper one, in so far as the disposition of the water is concerned, it would seem to be clear that when this case came before the Court on the motion to dissolve, there was nothing which it could properly do but continue the injunction. It is said in *Miller's Eq. Proc.* 708: "When the motion to dissolve is heard upon bill, answer and testimony and the bill shows a case entitling the plaintiff to an injunction, the injunction will not be dissolved if the equity of the bill is not denied by the answer. The defendant can not rely upon the testimony for the purpose of denying or disproving the equity stated in the bill, where the answer is not a sufficient denial of the equity"—citing *Hamilton* v. *Whitridge,* 11 Md. 128; *Bouldin* v. *Mayor, etc., of Baltimore,* 15 Md. 18.

At the time the bill and answer were filed, according to the allegations of the bill and the practical admissions of the answer, it was proposed to make the gutters so deep that the trees would be injured or destroyed in order to carry out the plan of diverting and concentrating the water, which was confessedly an improper plan and has been abandoned. There is no other reason given in the answer for making the gutters so deep. It is not permissible for the appellant to change its position under the pleadings, as they stood without amendment, and contend that, although the answer admits that the object in changing and deepening the drains was to carry off the water which was to be brought to and conducted down Goldsborough street, it could still justify its proposed action in deepening the gutters because that is a part of a

general scheme 'to grade the streets.   If the reason given in
the answer for doing what would probably have injured, and
possibly have destroyed the trees was the true one, then when
the plan was abandoned the reason ceased.   As was said by
the Court below: "The only necessity alleged by the defend-
ant for lowering the curb and gutters on Goldsborough street
to the extent contemplated by the plan of Williams, Proctor
and Potts was to enable the corporation to pass down that
street all the water to be collected at Harrison and Golds-
borough streets; and as the change of plan now provides for
passing all that water north on Harrison street to the stream
at the end of that street, there is now no existing necessity
whatever for changing the grade as contemplated by that
plan."

How far Courts can or ought to interfere with a municipal-
ity which, in grading or paving a street, is about to destroy
or seriously injure shade trees on the sidewalk of an abutting
owner, is a question of some delicacy, and not always easily
determined so as to avoid doing injury either to the public
or to such owner, but when there is clearly no necessity for
such destruction or injury the law of this State is well set-
tled.   In *Frostburg* v. *Wineland,* 98 Md. 239, the bill
admitted the right of the Mayor and Council to improve the
streets, to repave or change the width of the sidewalks or the
curbing, but charged ·that the plan adopted was a wholly
unnecessary, unreasonable, unjust and arbitrary one.   The
municipality by ordinance had declared that two trees of
Wineland were a nuisance and an obstruction to the paving
and curbing of the street, and had instructed the street com-
missioner to remove them.   An injunction granted below
was sustained by this Court.   JUDGE BRISCOE, in delivering
the opinion, said: "The law has been settled, in this State,
since the case of *Alberger* v. *Mayor, etc., of Baltimore* 64
Md. 7, that where the Legislature confers the power on a
municipality, in general terms, to provide by ordinance for
paving the streets, the discretion exercised by the city coun-
cil in regard to the propriety or necessity of the improvement

provided by the ordinance can not be controlled by the Courts, except where the power is exceeded or fraud is charged, and shown to exist, or where there has been a manifest invasion of private rights," and he concluded the opinion by saying: "The general doctrine, as stated by the appellee in his brief, can not be denied, that a city which is invested with power to regrade and repave a street can determine upon the expediency and necessity of so regrading, and upon the kind of pavement to be used, free from the interference of a Court of equity; but if a municipality in doing an act of that kind arbitrarily or unnecessarily undertakes to destroy private property which is not a nuisance, it then undertakes to do an act beyond its delegated power and those acts are within the corrective powers of a Court of equity."

That case clearly recognized the right of the Court to interfere when a municipality unnecessarily undertook to destroy trees which were private property and did not constitute a nuisance, and it resulted in the municipality being required to build the curb to each side of the trees and let the trees remain. Such being the decision of this Court, we can not hestitate to say that, inasmuch as it is clearly shown that there is no necessity for injuring these trees for the purpose for which it was alleged and in effect admitted the work was to be done, the injunction was properly continued, and we are therefore of the opinion that the decree must be affirmed.

Inasmuch, however, as the record discloses that the town of Easton has begun a general plan of improving the grades of certain of its streets, which includes Goldsborough street, we deem it proper to add that the decree continuing this injunction, being affirmed for the reason we have stated, must not be construed to prohibit the appellant from grading this street under a general plan of improvement adopted or to be adopted, even if in the execution of such plan it becomes necessary to so lower the gutters or drains along that street, or to so curb it, as will injuriously affect the trees on it. If such an effect can reasonably be avoided the municipal authorities should not "arbitrarily or unnecessarily" destroy or

injure the trees, but if a general plan for the improvement
of this and neighboring streets can only be properly carried
out by adopting a grade that will necessarily injure the trees,
then, although it is to be regretted, it can not be interfered
with by the Court. Trees on residence streets are orna-
mental, useful and sometimes very valuable, but they can
not be permitted to hinder improvements authorized by the
Legislature, if made in a proper and reasonable way, and it
is only when there is some such exception to the general rule
as to the powers of Courts to control municipalities as were
pointed out in *Alberger's case,* or *Wineland's case,* that they
will interfere. Municipal authorities should not act ruth-
lessly or without regard to the injuries likely to be sustained
by abutting owners, and it is a wise rule, adopted by some
Courts, which requires them to give an owner of trees planted
in the highway an opportunity to remove them, or, if possi-
ble, protect and save them, if that can be done without inter-
fering with the proper use of the highway. .

We will therefore affirm the decree, but with the under-
standing that *this* injunction is not to have the effect of pro-
hibiting the defendant from lowering the curb and gutters
on Goldsborough street, if that be necessary in carrying out
a general plan for the improvement of the streets. Whether
or not the defendant can be prohibited from executing any
particular plan can not now be properly determined, as we
can not anticipate what action will be taken, but it must be
understood that the continuance of this injunction under the
circumstances we have stated will not of itself preclude the
municipality from lowering the curb and gutters in the execu-
tion of a proper plan for improvement of the streets.

*Decree affirmed, the appellant to pay the costs.*