# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 20, 1916.

WILLIAM J. TICKNER & SONS, A BODY CORPORATE,

VS.

MAYOR AND CITY COUNCIL OF BALTIMORE.

*William Edgar Byrd* for complainants.

*S. S. Field*, City Solicitor, for defendant.

446

DAWKINS, J.—

The principal inquiry in this case is whether or not the courts have a right to review the actions of municipal officials in the exercise of a power conferred upon them by ordinance passed in pursuance of the City Charter, and, if they have such a right, to ascertain whether or not the power has been improperly used. The question of such right having been so recently reviewed by this Court in the case of Baltimore Cooperage Co. vs. The City, it would seem unnecessary to again consider that as I am persuaded that while the courts can not control the putting up or taking down of signs, when these are matters reposing in the discretion of the municipal authorities, yet the court has jurisdiction to review the action of said authorities when the power conferred is exceeded or fraud is charged and shown to exist or when there has been a manifest invasion of private rights, or an arbitrary exercise of such power. It is a doctrine not to be tolerated in this country that a municipal corporation or its officers can by mere declaration declare a thing to be true unless it be true. Courts can prevent or right a wrong. If the charter of a city confers certain powers upon it, the power to determine the expediency or necessity of measures relating to the local government committed to them while acting within the scope of their authority can not be controlled by the courts. Although the city has the right to do certain things in controlling its streets, yet if in performing its duty, its action should be shown to be unnecessary, unreasonable, unjust or arbitrary, such action may be reviewed by the courts. If the city undertakes to destroy private property (which is not a nuisance) it undertakes to do an act beyond its delegated power and such an act within the corrective powers of the court. It would seem that this principle is sound, whether applied to the granting of a mere license or permit or a franchise of any other character. The discretion conferred on the city officials is very broad, but it is not absolutely and in all cases beyond judicial control. In applying the doctrine of judicial control there is placed no improper restraints upon the action of municipal bodies. The city itself can not defeat the purposes for which the streets are intended.

See Baltimore Cooperage Company case, supra.

64 Md. 1, Alberger vs. Baltimore.

117 Md. 111, Easter vs. Turner.

49 Md. 217, Baltimore vs. Radecke.

99 Md. 367, Brauer vs. Refrigerating Co.

Whilst the principles above stated should control in this case, yet the courts should be very slow and cautious in attempting to disturb any actions of the municipal agencies. Their acts are presumed to be proper. The Mayor and his subordinates in this city have justified that presumption. If the courts have to arrogate to themselves the right to review every act of the city officials, merely because it seems not an act performed with discretion, the management of the city would become a judicially governed corporation rather than one governed by the officers elected by the people to govern them. The court would be exercising an executive discretion which the legislature has placed in the municipal officers.

Under Chapter 32 of the Acts of 1912 the Mayor and City Council are given power to regulate the use of the city streets for use of posts, poles, etc., in over or above any street or sidewalk or to compel the removal of the same, etc.

Under Section 37 the methods, conditions and terms upon which any permit, franchise, etc., may be granted is determined, and by Article 7, Section 6, of the Baltimore City Code is fixed the manner of granting special permits which may be revoked on thirty days' notice from the Inspector of Buildings, approved by the Mayor.

In this case the plaintiff charges that some time after (about four years) having erected its garage under a permit from the city, that it became advisable and advantageous to its business and for the benefit of the public that it have an electric sign over the entrance to the garage at a height of twelve feet, extending out

over the front pavement (about ten feet). Whereupon it submitted its application for permit with plans of the sign it wished to erect to the Board of Estimates of the City, and in due course obtained permission from said board to erect said sign upon payment of an annual franchise tax of six dollars and forty cents and an annual charge thereafter of five dollars, which sum of six dollars and forty cents was paid and the sign was erected at considerable cost and expense. After the lapse of about two months the plaintiff was directed to remove the sign, the only reason given was because the agreement made four years ago had been violated. No opportunity was given for any hearing or for making any protest. No other explanation was given. No investigation was made. It seems to be clearly established that no protest has been made against the use of the sign and that similar signs have been in use in the same block (to the south) as that in which the plaintiff's premises are located (which latter signs have not been disturbed by the city). The plaintiff charges an unfair discrimination, arbitrary action and a violation of its rights. The city contends that the permit was issued for the erection of the building in the first place only upon condition that the plaintiff should not hang any sign over the sidewalk, which condition was still in force when the sign was placed, and that the garage is in a residential section far removed from the business section of the city, and that the city has the full power and authority to order said sign removed, and in the event of the failure by the plaintiff to remove the same, the city has the right to remove it at the expense of the plaintiff. If no vested right is interfered with and the power is properly exercised, the city has a right to do what it proposed to do in that respect.

123 Md. 288, Etchison vs. Frederick.

The plaintiff does not remember that he was put under restrictions as to any sign when he was given permission to erect his garage. The Mayor's recollection is not clear that anything was said about signs, when the permit was given to erect the garage four years ago, but he is positive that the permit was granted upon the understanding that there was to be no sign to indicate the business, and that there was to be no projecting sign. The applica-

tion for permit was probably granted without being noticed in the large number of applications submitted at one time to the Board of Estimates. At any rate it was granted and accepted in good faith and the sign was erected. It is clear that there have been no protests from any source against the sign. That it is in no sense a nuisance or eyesore. That there is a trend of business to that section of North avenue. That projecting electric signs have been erected in that immediate vicinity. That no resident in the neighborhood has found any fault with the sign. The only objection seems to have come from the city officials on account of the failure of the plaintiff to live up to his agreement made four years ago without regard to change of neighborhood, business encroachment, etc. The Mayor says the policy of the Board of Estimates is to grant these permits when a section has become a semi-business locality. The evidence shows that there are a number of stores, etc., in the immediate neighborhood and that there are no vacant houses. Whether it be that this permit was granted in a regular way or through mistake would seem not so important as the fact when the plaintiff has erected the sign after having complied with all legal requirements should be compelled to take the sign down under the circumstances and conditions above mentioned, because four years ago it was understood by the city authorities that there was to be no sign? Should the city be permitted to take from the citizen the granting privilege without any other cause than the one stated?

It would seem that some reason other than this agreement, even if broken, should be shown for removal, even though the permit gave the city power to revoke. If a mistake was made no one on behalf of the city has offered to refund the franchise tax paid or reimburse the plaintiff for the expense incurred.

I am satisfied from the practically uncontradicted testimony that the sign has not injured the property in the vicinity, either for residence or other purpose. The only real estate expert who testified thinks that the sign is rather beneficial to the property in the vicinity. The conditions may change. I do not want to be understood as assuming or intending to grant a license

for erecting or removing signs or to continue this sign for all time, but applying the law to the testimony offered (I have reached my conclusions wholely upon the testimony) in this case, I am persuaded that to compel the plaintiff to remove its sign without any reason other than that disclosed for such action, would fall within the remedial power of the court, because it would seem an unreasonable exercise of power and not an exercise of such discretion as is reposed in the city officials under the Charter.

The motion to dissolve the injunction will be overruled.